NGUYEN DA YEN et al., Plaintiffs,

v.

Henry KISSINGER et al., Defendants.

No. C–75–0839–SW.

United States District Court,
N. D. California.

March 12, 1976.

Nancy Stearns, Center for Constitutional Rights, New York City, Thomas R. Miller, Berkeley, Cal., Dennis Roberts, Neil T. Gotanda, Asian Law Caucus, Oakland Cal., Morton P. Cohen, San Francisco, Cal., for plaintiffs.

John F. Cooney, Jr., Asst. U. S. Atty., John J. Klee, Jr., Deputy Atty. Gen., John W. Keker, Kipperman, Shawn & Keker, San Francisco, Cal., Carl A. Eklund, Lamm, Young, DiManna & Eklund, Denver, Colo., Kate Clair Freeland, Weld, Freeland & Chalmers, San Francisco, Cal., Sara-Jane Cohen, Cohen & Cohen, Boulder, Colo., Herbert Lombard, Sahlstrom, Lombard, Starr & Vinson, Eugene, Ore., for defendants.

## MEMORANDUM ORDER

SPENCER WILLIAMS, District Judge.

This court ordered *sua sponte* that a hearing be held pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure to determine whether this case may properly be maintained as a class action. The parties briefed the issue and appeared and argued the class action aspects of this case. For the reasons stated below, the court finds that this action cannot be maintained as a class action.

In addition to the class action issue, the parties have briefed, and have submitted to the court, the question of the court's jurisdiction to entertain the case in the first instance. The ninth circuit found our jurisdiction adequately based upon the district court's habeas corpus power. *Nguyen Da Yen, et al., v. Henry Kissinger, et al.,* 528 F.2d 1194, 1202, (9th Cir. 1975) (hereinafter *Nguyen Da Yen I*). Based on the reasoning hereinafter set forth, this court concludes that it possesses jurisdiction under both its habeas corpus power and federal question jurisdiction, 28 U.S.C. § 1331.

## FACTS

The present action alleges, basically, that some of the children airlifted from Vietnam in the orphan airlift of April, 1975 (the "Babylift") were brought here improperly:

> The documentation accompanying some of the children is insufficient on its face to establish the child's status as an orphan, abandoned, or irrevocably released child, the validity of the private agency's custody of such a child under Vietnamese child custody law, or child's eligibility for admission under 8 U.S.C. §§ 1101(b)(1)(F) and 1151(b). (*Nguyen Da Yen I* at 1197.)

Many potential reasons exist for inadequate documentation. In at least some cases, presumably the children are not orphans or have not been validly released into the custody of the adoption agencies. Plaintiffs assert that some of the children have living parents and were placed in Vietnamese orphanages for safekeeping, according to Vietnamese custom. Other children allegedly were released with the understanding that the parents would be reunited with their children here, or that the child would be sent to relatives already in the United States. Still others, it is claimed, were released by hysterical parents terrorized by the fear that the child would be murdered by the approaching opposition forces, and in these situations plaintiffs attack the validity of the releases. As the ninth circuit stated:

> To put the matter in broad outline, the ultimate objective the plaintiffs seek is the reunion of children with their parents. . . .
>
> \* \* \* \* \* \*
>
> In essence, plaintiffs allege that the defendants' cooperation in the removal of a child from Vietnam without proper custo-

dy of it having been obtained (including by totally voluntary parental releases), and its continued, allegedly involuntary, detention in this country in custody other than that of its natural parent, is a violation of the child's fundamental human rights and of its Fifth Amendment right to liberty and due process. (*Id.* at 1197.)

## CLASS ACTION CERTIFICATION

Nearly two thousand children were brought to the United States in the Babylift operation. Plaintiffs claim that many are neither in fact orphans nor were they properly relinquished for adoption. Apparently plaintiffs are prepared to contest many written releases, valid on their face, on the basis of mass hysteria allegedly pervading Vietnam immediately prior to the fall of the South Vietnamese government.

The proposed class in whose name the three Vietnamese plaintiffs have brought this action originally contained "several hundred Vietnamese children who are not orphans and who have been paroled into and are being held in this country for the purpose of adoption [and whose] parents have not signed releases for their adoption." (Complaint, ¶ 16.) This definition has been broadened in the ten months during which these proceedings have laboriously transpired. It has most recently been enunciated to include "*all* Vietnamese children now in the United States, who departed Vietnam in or after April, 1975, who have not been *legally* released for adoption, and who have families in Vietnam or elsewhere desiring their return." (emphasis added) (Plaintiffs' Memorandum in Support of Motion for Class Denomination, at p. 25.) The seemingly slight amendment of the definition (from "signed" releases to "legally" released) has, of course, broadened the scope of this action into one now including every child brought over. A perusal of the record by this court to ascertain the existence of signed releases is, evidently, not contemplated by plaintiffs' attorneys to be conclusive of anything.

At an early hearing this action was denominated a conditional class solely for the purposes of initial discovery. By the end of 1975 it became apparent that if a hearing to determine whether the action would be certified as a proper class action for trial were to be held before plaintiffs' attorneys deluged this court with individual petitions for action on the merits of individual children's cases, such a hearing would have to be at the court's own motion. The court therefore scheduled dates for the parties to submit papers, and a hearing was set for and transpired on February 13, 1976.

## ROLE OF THE COURT IN CERTIFYING A CLASS ACTION

 The particular merits of plaintiffs' claims are not issues to be considered upon a motion for class certification under Rule 23. *Miller v. Mackey International, Inc.*, 452 F.2d 424, 427 (5th Cir. 1971). There is actually no basis in the context of a class certification hearing to inquire into the merits of the claims of the named plaintiffs nor the merits of the cause of action generally. *Huff v. N. D. Cass of Alabama*, 485 F.2d 710, 712 (5th Cir. 1973) (en banc); *B & B Investment Club v. Kleinert's Inc.*, 62 F.R.D. 140, 144 (E.D.Pa.1974). As the Supreme Court stated,

> We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it. . . .
> [A] preliminary determination of the merits may result in substantial prejudice to a defendant, since of necessity it is not accompanied by the traditional rules and procedures applicable to civil trials. (*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–178, 94 S.Ct. 2140, 2152–2153, 40 L.Ed.2d 732, 748–749 (1974).)

Nevertheless, an analysis of the issues and the nature of the proof which will be required at trial is directly relevant to a determination of whether the matters in dis-

pute are principally individual in nature or are susceptible of proof equally applicable to all class members. *Abercrombie v. Lum's, Inc.*, 345 F.Supp. 387, 390 (S.D.Fla. 1972) *See Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 269–270 (10th Cir. 1975).

 It is this court's duty to determine whether the class action meets the four conjunctive requirements of 23(a), Fed.R. Civ.P., as well as one of the subdivisions of 23(b). *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163, 94 S.Ct. 2140, 2145, 40 L.Ed.2d 732, 740 (1974); *Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114, 117 (5th Cir. 1975). In making such a determination, this court is vested with a discretion which will not be disturbed on appeal unless abused. *Price v. Lucky Stores, Inc.*, 501 F.2d 1177, 1179 (9th Cir. 1974). In exercising that discretion, the correct criteria must be applied to the facts as alleged in the case. *Bermudez v. United States Dept. of Agri.*, 490 F.2d 718, 725 (1973); *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791, 792–793 (10th Cir. 1970). Those criteria must be cautiously applied to avoid denying class action status where to do so would sound the death knell of the action. *See Blackie v. Barrack*, 524 F.2d 891, 896 (9th Cir. 1975); *Falk v. Dempsey-Tegeler & Co., Inc.*, 472 F.2d 142, 143–144 (9th Cir. 1972); *Eisen v. Carlisle & Jacquelin*, 370 F.2d 119, 121 (2d Cir. 1966), *cert. den.* 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967).

The present suit is not, like *Eisen*, one in which each claim is so inconsequential that no plaintiff or member of plaintiffs' class could press the suit individually. Here the rights at stake are, by plaintiffs' reckoning and the court's concurrence as stated below, worth in excess of $10,000 each. Furthermore, as pointed out by plaintiffs' counsel at the February 13 hearing, denial of a class in this instance will undoubtedly result in the filing of many individual suits on behalf of the children.

 In determining whether a matter should proceed as a class action the court is required to make findings concerning each essential element of the class action rule. *Price v. Lucky Stores, Inc.*, 501 F.2d 1177,

1179 (9th Cir. 1974). In that process, the burden of showing that the requirements for certifying a class action have been met lies with the party seeking certification. *Redhouse v. Quality Ford Sales, Inc.*, 511 F.2d 230, 236 (10th Cir. 1975); *Albertson's Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459, 463 (10th Cir. 1974); *Bel Air Markets v. Foremost Dairies*, 55 F.R.D. 538, 540 at n. 1 (N.D.Cal.1972). Failure to meet any one of the requirements of Rule 23(a) destroys the class action. *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975).

NUMEROSITY: Rule 23(a)(1)

██ The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable". Fed. R.Civ.P. 23(a)(1). In order for the court to be able to determine whether the class is so numerous that joinder of all the members would be impracticable, plaintiffs must show some evidence of or reasonably estimate the number of class members. Mere speculation as to satisfaction of this numerosity requirement does not satisfy Rule 23(a)(1). *See Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970); *DeMarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968); *O'Brien v. Shimp*, 356 F.Supp. 1259, 1266 (N.D.Ill.1973); *Sims v. Parke Davis & Co.*, 334 F.Supp. 774, 781 (E.D.Mich.1971), *aff'd*, 453 F.2d 1259 (6th Cir.), *cert. den.*, 405 U.S. 978, 92 S.Ct. 1196, 31 L.Ed.2d 254 (1972); *Male v. Crossroads Associates, Inc.*, 320 F.Supp. 141, 150 (S.D.N.Y.1970).

The second circuit has denied a class where the only evidence in the record of the class size and impracticability of joinder was purely speculative. *DeMarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968). In *DeMarco*, the class was estimated to be "100 or more." The estimate resulted from the fact that 40,000 shares of securities had been sold, and that they must have been sold in blocks of from 100 to 300 shares per block. Simple arithmetic established at least 100 members of the class. 390 F.2d at 845.

A similar calculation was rejected as the basis for finding a class too numerous in

Massachusetts in *Baxter v. Minter*, 378 F.Supp. 1213 (D.Mass.1974). The allegation of class size in *Baxter* relied on state welfare statistics: According to Department of Community Affairs statistics, there were approximately 78,849 families with children in Massachusetts who earn less than $7,000 gross per year, and who do not participate in AFDC or GR aid programs. 378 F.Supp. at 1216. Such an allegation failed to identify a class or to demonstrate that the composition of the class was so vast that joinder was impossible. *Id.*

In a 1972 Georgia case, plaintiffs sued to enjoin county election registrars from discriminating against university students in voter registration matters. *McCoy v. McLeroy*, 348 F.Supp. 1034 (N.D.Ga.1972). The class allegation was based on the presence in the county of 18,000 students. Finding such a claim inadequate to satisfy 23(a)(1), *McCoy* held that such an estimate provided no showing that any substantial number of students desired to vote in the county.

An estimate that a class, in Delaware, was 33 to 650 strong amounted to such speculation that the court could not make an informed judgment as to whether the class was so large as to make joinder impracticable. *Al Barnett and Son, Inc. v. Outboard Marine Corp.*, 64 F.R.D. 43 (D.Del.1974).

> As a New York district court explained, there is no showing of any sort as to how many members of the class there are. There are conclusory averments that the members of the class are "numerous". This is not sufficient. There are no *facts* averred, much less established, on the issue whether "the class is so numerous that joinder of all members is impracticable." (*Male v. Crossroads Associates, Inc.*, 320 F.Supp. 141, 150 (S.D.N.Y.1970).)

█ Plaintiffs, in the present case, are able to say only that at least a few of the children here as a result of the Vietnamese orphan airlift are similarly situated to the named representatives. They have said that perhaps hundreds of children are members of the class. There is , it seems, not even an estimate possible of the size of the class. This court is unable to determine that more than 10 or less than 2000 children are in the class. There has been no showing that the class is so numerous as to make joinder impracticable.

COMMON QUESTIONS OF LAW OR FACT: Rule 23(a)(2).

█ Essential to the maintenance of a class action is the requirement that there be questions of law or fact common to the class. Fed.R.Civ.P. 23(a)(2). Plaintiffs have not shown that the questions of fact in each Babylift child's case are common to any other child's case. These children came from many different orphanages scattered all over a country ravaged by twenty years or more of war and confusion. Each orphanage had different procedures relating to the release of children, acceptance of orphans, and dealings with foreign agencies. Many different adoption agencies were active in Vietnam in April, 1975, and only a few have been granted intervention to date. While on issues relating to procedures for discovery these agencies seem to agree, they have individual interests which differ from each other as to different children.

Some of the children may be orphans; some abandoned by the side of a road; some released in a writing which might or might not prove to be the subject of a heated debate on duress or coercion; some might have been released through fraudulent representations made by adoption agency employees (intentionally or negligently); some might not have been released in writing, but rather orally (and then the question of sufficiency of release becomes even more complicated). The individual considerations permeating each child's situation are beyond calculation.

An analogous situation arose in *Metcalf v. Edelman*, 64 F.R.D. 407 (N.D.Ill.1974). Plaintiffs there were welfare recipients who brought a class action against state officials. In denying a class for lack of common issues, the district court found that,

separate adjudications are required to determine if a particular plaintiff is being deprived of a livelihood compatible with health and well-being and is thus a member of the class. (64 F.R.D. at 409–410.) The varying circumstances in each situation negated a claim that common issues of fact were present.

In the present case the law or regulations of Immigration and Naturalization are not under a broad attack. There is no policy alleged which allowed children to be brought over to the United States without meeting any standards. The questions common to the class, as plaintiffs would urge, are the ways in which Immigration and Naturalization and the other federal defendants dealt with each individual child. A totally separate adjudication is required before anything can be said in respect to any one child.

In a case factually comparable to this action the same lack of common questions was fatal to a class certification. *See Burnham v. Department of Public Health*, 349 F.Supp. 1335 (N.D.Ga.1972). Patients at a mental health institution alleged that their diagnosis, care and treatment were constitutionally inadequate. The court found that what would be good diagnosis and treatment for one patient was not necessarily the same as for another, and the only feasible way in which the adequacy of treatment could ever be tested would be against the needs of a particular patient. 349 F.Supp. at 1343. There was therefore no common factual basis for finding a class and any constitutional principles would be applied disparately in each case.

Each Vietnamese child brought to this country during the orphan airlift brings to this case a completely unique set of facts. The common principles of "due process" and "liberty", and even the fact that the same code section will be applied to each case (8 U.S.C. § 1101(b)(1)(F)), do not provide a common question of law. Each child's case must be factually and legally reviewed independently of every other case. A decision in one instance will have no effect on a decision in another.

Illustrative of the complete individuality of factual and legal questions is the following exchange between the court and one of plaintiffs' counsel regarding various aspects of any tracing plan for discovering relatives in Vietnam of children here in the United States:

*THE COURT*: What you are then saying, as I interpret it, if there is any question in your plan about the eligibility of a child for adoption, you would send the file to [the international agency] and have a de novo investigation from the beginning as to eligibility.

*MS. STEARNS*: It varies depending upon what the irregularities are that have been found by either the masters or masters—[sic]

*THE COURT*: You haven't indicated to me any variance.

*MS. STEARNS*: Your Honor, we felt that it would not be appropriate at this point without having analyzed all of the files.

*THE COURT*: I want a hypothetical.

*MS. STEARNS*: I have given you an answer.

*THE COURT*: You said send the whole file.

*MS. STEARNS*: I can think of a file that I have looked at, which we will in fact put a portion thereof into evidence today, where if the signature had not been authenticated, I would want a de novo hearing on that file and any other file where the release was signed by the same individual, because Immigration has already found plain proof that that individual made up a release that was not true. Therefore, if that individual signed another file without authentication, then I think we would want a de novo hearing to see if that was totally made up, like the other one we found, or whether it was not.

　　*　　　*　　　*　　　*　　　*　　　*

I think that when you see the files you will understand that you can't just make the generalizations. *Because there are very, very great differences* in the prob-

lems in the different files. (emphasis added) (Reporter's Transcript, December 17, 1975, at pages 19–20.)

It is the opinion of this court that, indeed, there are no generalizations which we can make as to any of these individual cases which would satisfy the requirements of Rule 23(a)(2). The common questions of law or fact required for the maintenance of a class action are absent in this case.

TYPICALITY: Rule 23(a)(3)

The third prerequisite of Rule 23(a) is that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). This requirement

> has been equated with the (a)(4) requirement that the representative party must adequately represent the class, or with one of the elements usually considered as part of this adequacy requirement, i. e., that the interest of the representative party must be coextensive with the interests of the other members of the class, and that there be a lack of adverse interests between the representative party and other members of the class. (3B Moore's Federal Practice ¶ 23.06–2, at page 23–325. *See also* Plaintiffs' Memorandum of Points and Authorities in Support of Motion to Denominate Class, at page 26.)

Professor Moore went even further, and suggested that, in fact,

> there is no need for this clause, since all meanings attributable to it duplicate requirements prescribed by other provisions in Rule 23. (3B Moore's Federal Practice ¶ 23.06–2, at p. 23–325.)

Many courts have disagreed with such an interpretation. *See, e. g., Poindexter v. Teubert*, 462 F.2d 1096, 1097 (4th Cir. 1972); *Kinsey v. Legg*, 60 F.R.D. 91, 100 (D.D.C. 1973). The tenth circuit has accepted what it termed "compelling reasoning" that subsection (a)(3) must have a meaning independent of the other provisions of Rule 23(a). *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 270 (10th Cir. 1975). The inexorability of an independent meaning does not negate the historical nexus between typicality and the adequate representation requirement of 23(a)(4); it is the product of that nexus. When the original Rule 23, requiring "one or more [representatives], as will fairly insure the adequate representation of all . . . ." (524 F.2d at 269) gave way to the new rule, subsection (a)(3) was added. Yet the broad language of (a)(4) requiring adequate representation covered the same ground. Unless (a)(3), the typicality requirement, is superfluous, it must have an independent meaning.

That independent meaning, according to the tenth circuit, is a requirement, at least, that the plaintiff establish the existence of a class with typical claims. Any inquiry into typicality under Rule 23(a)(3) requires a comparison of the claims or defenses of the representative with the claims or defenses of the class. 524 F.2d at 270. If the class, defined by plaintiffs, has claims typical of the claims plaintiffs themselves advance, then 23(a)(3) is satisfied.

The three named representatives, according to the complaint originally filed in April, 1975, and according to the affidavit in support of a motion to be appointed guardian *ad litem* for the named plaintiffs, are Nguyen Da Yen, Nguyen Da Tuyen and Nguyen Da Vuong, a brother and two sisters. These children had allegedly become lost in Vietnam and were placed in an orphanage. After only a few days they were flown to the United States as part of the "Babylift." As Muoi McConnell, the guardian *ad litem* stated, "The children wish to return to their home and family."

The original definition of the class included "children whose parents are in Vietnam and who should, therefore, be returned to be reunited with them, as well as children who were relinquished to United States authorities to be brought to this country on the condition that they be reunited with their parent(s) in the United States," (Complaint, ¶ 6,) or "several hundred Vietnamese children who are not orphans and who have been paroled into and are being held in this country for the purpose of adoption [and

whose] parents have not signed releases for their adoption." (Complaint, ¶ 16.)

■ An examination of the claims and defenses of the representative plaintiffs with the claims and defenses of absent class members indicates a lack of typicality. A *typical* class, at least in terms of the class definition in the complaint, would be only those children who were lost in Vietnam, placed in orphanages, shipped to the United States for adoption, have no release in writing, and want to return to Vietnam to be with families who are there. Class members with *atypical* claims would include those who have parents here in the United States who are among the many thousands of refugees; those who were sent to the United States to be united with aunts or uncles but wound up on adoption programs; and those who were released in Vietnam but whose releases are subject to attack by plaintiffs' counsel for any number of reasons (and the varying reasons for attacking releases, in and of themselves, constitute atypical claims.)

Additionally, many adoption agencies are involved in this action, since many different agencies handled the adoption efforts and dealt with Vietnamese orphanages. Many different orphanages are involved, as well. Each orphanage or adoption agency might have had different procedures. The claims of the children from each agency or orphanage might depend upon different facts and lead to the raising of different defenses. Within a group of children from each orphanage the claims might vary and the defenses differ.

■ Plaintiffs have the burden of showing that a class of individuals exists with claims that are typical of plaintiffs' claims. *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 270 (10th Cir. 1975). Plaintiffs have failed to sustain that burden.[1]

ADEQUATE REPRESENTATION: Rule 23(a)(4)

■ The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). An identity of interests, such as results when the claims and defenses to be raised are "typical", insures adequacy of representation. In discussing typicality, many courts find adequate the representation of absent class members when the representative's claims do not diverge:

> If all the members of a purported class would be benefited by the suit the plaintiff seeks to bring, the requirement of typicality has been satisfied. (*Souza v. Scalone*, 64 F.R.D. 654, 657 (N.D.Cal. 1974).)

Conflicts of interest, especially antagonistic or divergent claims, preclude formulation of relief which will benefit all the members of

---

1. One further aspect of Rule 23(a)(3) must be considered. Plaintiffs have argued that civil rights cases merit less stringent application of the prerequisites of Rule 23. The same contention was urged in *Taylor* in relation to the typicality requirement of Rule 23(a)(3). The *Taylor* court rejected such a claim. 524 F.2d at 270. Taylor had raised an "across the board" attack on the racially discriminatory policies of Safeway Stores in Colorado. The court said:

> If the mere assertion of widespread employment discrimination were sufficient to satisfy the typicality requirement, subsection (a)(3) would again be rendered superfluous, since it would be unrealistic for a court to compare the claims and defenses of the plaintiff with the hypothetical claims of a hypothetical class. (*Id.*)

The disparate and atypical claims and defenses of the broader class plaintiffs would represent, as they are compared above, serve to under-score the dilemma posed by the *Taylor* court. Were the lack of commonality not a problem, we would of necessity be forced to limit the class to those children whose claims are typical of the claims of the three named representatives.

The tenth circuit added that its decision in *Taylor* was not in conflict with other tenth circuit decisions allowing broad attacks on a company's employment practices. *See Rich v. Martin Marietta Corp.*, 522 F.2d 333 (10th Cir. 1975). The distinction *Taylor* makes is between the existence of a group of employees discriminated against by company policy as opposed to an absence of any showing by plaintiffs that any group suffered from a uniformly applied practice of discrimination. It is the same distinction between an attack on a deficient policy and a policy applied in individual cases in a deficient manner.

the class. Antagonistic claims thwart the adequacy of representation. *See Albertson's Inc., v. Amalgamated Sugar Co.*, 503 F.2d 459, 463 (10th Cir. 1974). A court must decline to entertain an action as a class suit if it discerns that the interests of the named plaintiffs are in significant part antagonistic to those of the class they purport to represent. *Phillips v. Klassen*, 163 U.S.App.D.C. 360, 502 F.2d 362, 366 (1974), *cert. den.* 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269. Such a result is mandated by the requirements of due process: the class action is an action taken in the name of the absent parties, and they will be bound by it. Class members whose interests are antagonistic in fact to, or even "potentially conflicting" with, the interests of the ostensibly representative parties cannot be bound, consistently with the requirements of due process. *Hansberry v. Lee*, 311 U.S. 32, 41–42, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Phillips v. Klassen*, 163 U.S.App.D.C. 360, 502 F.2d 362, 366 (1974), *cert. den.* 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269.

The degree to which interests can be potentially conflicting, and thereby prevent a finding of adequate representation, has been dealt with on numerous occasions by federal courts. *See, e. g., Phillips v. Klassen*, 163 U.S.App.D.C. 360, 502 F.2d 362, 366–367 (1974), *cert. den.* 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (retired post office employees contesting premature retirement on grounds of coercion had interests which conflicted with those retired employees who were happy with early retirement); *Schy v. Susquehanna Corp.*, 419 F.2d 1112, 1117 (7th Cir. 1970) *cert. den.* 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (shareholders opposing a merger versus the 80% of the stockholders who voted in favor of the issuance of stock to effect the merger); *Carroll v. American Federation of Musicians of U. S. & Can.*, 372 F.2d 155, 162–163 (2d Cir. 1967) *judgment vacated on other grounds*, 391 U.S. 99, 88 S.Ct. 1562, 20 L.Ed.2d 460 (conflict between orchestra leaders, some of whom were union members and some not).

In the present action the plaintiffs' attorneys appear devoted to the reunification of these children with their biological parents.

The ninth circuit has also recognized this motivation:

> In essence, the suit is a mass child custody proceeding wherein the guardian *ad litem* and her attorneys are representing the interests of the natural parents, and of the children insofar as their interest conform [sic] to the legal presumption that they are best off in the custody and care of their natural parents. (*Nguyen Da Yen I* at page 1198, note 1.)

While beyond the scope of this court's inquiry in this litigation, it is possible, in the individual circumstances peculiar to certain children, that the best interest of the children would not be a return to biological parents. It is not necessary to ruminate too extensively to imagine many situations where, for emotional, psychological, medical or other reasons, a child would be better off remaining with the adoptive parents. It is impossible to decide arbitrarily either that children are better off here or that they would be better off returned to Vietnam and their biological parents. The individual interests of each child would, if plaintiffs' attorneys were allowed to represent all children, be dangerously "buried in the catch-all of the class action." *Phillips v. Klassen*, 163 U.S.App.D.C. 360, 502 F.2d 362, 367 (1974), *cert. den.* 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269.

■ It is the opinion of this court that the current lawsuit does not afford adequate protection of the interests of the members of the putative class to permit maintenance of a class action. Failure to satisfy the requirements of Rule 23(a)(4) alone compels this court to deny class certification in this action.

REQUIREMENTS OF RULE 23(b)(2)

■ This action seeks injunctive relief "pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure." (Complaint, ¶ 15.) Any injunctive relief, if this court could fashion such relief in the present case, is appropriate because it would be mandated by Rule 23(b)(2):

> the party opposing the class has acted or refused to act on grounds generally appli-

cable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. (Fed.R.Civ.P. 23(b)(2).)

An extremely close identity of common questions and of typical claims is required if the relief is to enjoin defendants from further acting on grounds generally applicable to the class as a whole. Indeed, the very commonality of treatment of the "class" by the opposing party coupled with the injunctive form of relief is why (b)(2) class actions are preferred for their wider *res judicata* effect. *Bing v. Roadway Express, Inc.,* 485 F.2d 441, 447 (5th Cir. 1973).

Yet it is this very effect of a class action certification which necessitates a careful application of the requirements of Rule 23(a) in a class certification proceeding. No member of the class would be allowed to "opt out" of the class; the injunctive relief sought, directed as it would be towards one defendant, would reach every member of the class irrespective of his or her inclusion therein. *Airline Stewards v. American Airlines Inc.,* 490 F.2d 636, 642 (7th Cir. 1973). The careful consideration of similar interests of class representatives and absent class members prevents the wide, almost automatic effect of a (b)(2) injunction from creating due process difficulties for those persons bound by an action in their names.

But beyond the effect a (b)(2) certification has, and the reasons why the requirements of 23(a) are especially important in a (b)(2) certification proceeding, this court is faced with the extraordinary nature any injunctive relief in this action must take. This case involves a group of some two thousand individual children and the plethora of individual factual and legal questions relating to each child. The requirements of hearings and determinations as to each child's situation preclude the fashioning of any relief which might be directed towards the group as a whole.

The obvious need not be stated beyond an example of the only kind of relief which could be fashioned in this situation: An injunction could issue which would or-

der that all children brought to the United States in April of 1975 who were brought here illegally under 8 U.S.C. § 1101(b)(1)(F), and who are being detained in violation of their constitutional rights of liberty and due process of law, shall be deported forthwith. Such an order states the law and the proposition that it shall not be violated in the case of any of the children. But the result puts us back to the first square, faced with discovery, motions, determinations and hearings in each case. Some two thousand individual adjudications are required. And some two thousand individual injunctive orders or judgments of some kind would be necessary. This is not a situation suitable for relief under Rule 23(b)(2).

RULE 23(b)(3)

While plaintiffs' attorneys have sought only a certification under Rule 23(b)(2), it is also impossible to find any basis for a certification of this class under either of the other two subcategories of Rule 23(b). *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 2145, 40 L.Ed.2d 732, 740 (1974).

Rule 23(b)(3) permits a class action to be maintained if

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. (Fed.R. Civ.P. 23(b)(3).)

On at least three very pertinent grounds this action is not suitable for a 23(b)(3) class action. While normally a (b)(3) action is for damages, there is no language in the rule which precludes a suit for injunctive relief from being entertained under (b)(3).

First, the lack of predominating common questions is fatal to a (b)(3) class. Each child's situation is so individual that the individual questions would overwhelm the common questions. *See In re Hotel Telephone Charges,* 500 F.2d 86, 90 (9th Cir. 1974). It cannot be said with certainty,

beyond the common legal premise of due process, liberty and 8 U.S.C. § 1101(b)(1)(F), that there are any common issues of law or fact in this case. Common questions do not predominate over individual issues.

■■■ Second, the divergent interests which deny adequate representation by the named representatives of the class illumine a critical difficulty any (b)(3) class certification request would face:

> The matters pertinent to the findings [of a (b)(3) class] include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions . . .. (Fed.R.Civ.P. 23(b)(3).)

When the interests of individual, absent members of the class are not adequately represented, then the interest in controlling a separate adjudication of the issues is paramount and rises to the level of a due process requirement. *See Hansberry v. Lee,* 311 U.S. 32, 41–42, 61 S.Ct. 115, 117, 85 L.Ed. 22, 26 (1940).

■■■ A third ground for denying this class under Rule 23(b)(3) would of necessity be "the difficulties likely to be encountered in the management of a class action." (Fed.R.Civ.P. 23(b)(3)(D).) While manageability (or the unmanageability) of class suits should be considered in any determination of the suitability of a (b)(3) action, mere

> [n]ovel administrative challenges cannot, alone, justify rejection of a class suit. Only where the attention and resources which would have to be devoted strictly to administrative matters will overwhelm any relief ultimately accruing to the parties, can difficulties in management support denial of class status under 23(b)(3). (3B Moore's Federal Practice ¶ 23.45[4.–4], at page 23–893.)

The present suit is one in which every action which must be taken from this point forward must be directed carefully by the court. A timetable for each individual hearing will eventually have to be devised. The further direction of discovery and the extensive utilization of magistrates and special masters (a questionable practice in terms of the rights of the parties involved)

will far outstrip the ability of the court to fashion the injunctive relief sought by plaintiffs.

If there ever were a "Frankenstein monster posing as a class action" (*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 169, 94 S.Ct. 2140, 2148, 40 L.Ed.2d 732, 744 (1974),) this is it. It is the opinion of this court that the problems of managing some two thousand individual determinations of both illegal conduct by the defendants and intervenors and the right course of future action for each plaintiff would overwhelm this court's abilities.

This action is not an action maintainable under Rule 23(b)(3), for the reasons stated here. All that has been said in this opinion so far, in addition, makes clear and inevitable that a class action format is not superior to individual adjudications of each child's status.

RULE 23(b)(1)

■■■ The risk of separate adjudications creating different and incompatible standards of conduct for the party opposing the class (23(b)(1)(A),) and the risk of different conclusions affecting the individual members of the class (23(b)(1)(B),) are the two subcategories of 23(b)(1). The government must apply 8 U.S.C. § 1101(b)(1)(F) and § 1151(b) to determine the eligibility for admission to this country of each person falling within the definition there stated. This or any other court, in a de novo determination of eligibility, would also apply that statute. The body of federal laws and regulations interpreting those sections does not create a risk we should avoid, but may well serve to elucidate principles upon which determinations thereunder may rest. We believe that the impossible difficulties in maintaining this action as a class action and the potential benefit from individual case by case determinations (as would be necessary in even a class action here) far outweigh any risk that there may be.

No child will be bound by the determination of his situation, except as all people are bound by the same law if it applies to them.

The determination that one child is not a legally admitted child under § 1101(b) will not result in the exclusion or deportation of other children. The facts inherently peculiar to each child's situation will be determinative. The disposition of one child's case will not be dispositive, nor impair or impeded the protection, of the interests of other children.

It is the opinion of this court that none of the requirements of Fed.R.Civ.P. 23(b) will permit the maintenance of this class action. As discussed above, none of the requirements of Rule 23(a), in our opinion, have been satisfied. This action cannot proceed as a class action.

Insofar as this case is similar to those cases involving civil rights violations and Title VII claims, the standard for applying the Rule 23 prerequisites to class action certification should not be more lenient. The fifth circuit apparently adopted a lenient standard in civil rights cases. *See, e. g., Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir. 1969).

The court of appeals in *Johnson* found limits placed upon the class by the district court to be an abuse of discretion, since it was clear from the pleadings that the scope of appellant's suit was an "across the board" attack on unequal employment practices allegedly committed by the defendant pursuant to its policy of racial discrimination. 417 F.2d at 1124. The court noted the obviously different factual questions related to each different employee, but added "it is also true that the 'Damoclean threat of a racially discriminatory policy hangs over the racial class . . . a question of fact common to all members of the class.'" *Id.*

*Johnson* simply rejected an impermissible narrowing of a class. As Judge Godbold pointed out, "[W]e are telling the District Court that it defined the class too narrowly and that it must extend the limits outward. We are not, at the appellate level, attempting to stake out the precise limits of an appropriate class." 417 F.2d at 1125. The precise class could be more extensively delineated because an employer's overall policy of discrimination against a minority group was a common question of fact capable of statistical proof and amenable to direct evidentiary testimony on a broad scale. *Johnson* did not invite broad attacks in the class action format merely because civil rights were in issue. *See Knox v. Meat Cutters,* 11 F.E.P. 1327, 1329 (E.D.La. 1975). Each case must still be considered on its own merits. *See Wells v. Ramsay Scarlett and Co. Inc.,* 506 F.2d 436, 10 F.E.P. 1480 (5th Cir. 1975).

The tenth circuit has explained the effect of *Johnson* in the same manner. *Taylor v. Safeway Stores, Inc.,* 524 F.2d 263, 270 (10th Cir. 1975). *Taylor* added that even if *Johnson* were construed to mean that an "across the board" attack on an employer's discriminatory practices is sufficient to maintain a class action, such a rule would have to be rejected or Rule 23 would be a mere pleading rule. The fifth circuit itself has not released district courts from the prerequisites of Rule 23: "Class actions are governed by the quite specific requirements of Rule 23 of the Federal Rules of Civil Procedure . . . ." *Danner v. Phillips Petroleum Co.,* 447 F.2d 159, 164 (5th Cir. 1971) (two years after *Johnson*). Faced with civil rights claims which turn on peculiarly individual questions, courts have been scrupulous in applying the requirements of Rule 23 and thereby necessitating a denial of class action certification. *See, e. g., Padilla v. Stringer,* 395 F.Supp. 495, 502–503 (D.New Mex.1974); *Burnham v. Department of Public Health,* 349 F.Supp. 1135, 1343 (N.D.Ga.1972).

The ninth circuit has been reluctant to overlook or minimize the requirements of Rule 23 in Title VII cases:

> While the provisions of Title VII authorizing the court to waive costs and fees and to grant attorney's fees, 42 U.S.C. §§ 2000e–5(e), 2000e–5(k), indicate that Congress intended to ease the way of the Title VII plaintiff, the same provisions also indicate that when Congress intended to grant special privileges or to waive the usual procedural rules it knew how to

say so. (*Gregory v. Litton Systems, Inc.,* 472 F.2d 631, 633 (9th Cir. 1972).)

A recent ninth circuit opinion upheld the denial of retrospective class relief where the claim of discrimination was the exclusion of all homosexuals from government employment pursuant to Civil Service Commission policy. *Society for Individual Rights, Inc., et al., v. Hampton, et al.,* 528 F.2d 905, No. 74–1793 (9th Cir. 1975). The issue of liability would have depended upon an individual showing that the homosexual activity had no rational bearing on the individual's job performance. (At p. 906.) Such a case of discrimination is distinguishable from racial discrimination, which is *per se* illegal: There is no burden in cases of racial discrimination for each employee to show that his race was irrelevant to the requirements of the job. (At p. 906 at note 3.)

The *lenient* application of Rule 23 to certain civil rights class actions is an illusion. Some cases establish liability of a defendant without scrutinizing the relationships between the defendant and individual plaintiffs. These cases include broad attacks on a policy, regulation, rule or statute which discriminates against all persons in a defined class or deprives a group of fundamental rights.[2] At the other extreme are cases which may involve invidious discrimination, but only insofar as the circumstances between an individual plaintiff and a defendant show the discrimination. The individualized proofs, defenses and resolution necessary will show the case to be one essentially between two people rather than between a person and a group.

In short, this court is not persuaded that the "civil rights" nature of this claimed deprivation of liberty and due process under the Fifth Amendment requires or even permits a less stringent application of the Rule 23 prerequisites.[3] This court is constrained to examine this case at this stage as it would any other case, and to apply Rule 23 in determining whether the action may be maintained as a class action. As stated above in this opinion, this action may not be maintained as a class action.

## JURISDICTION

The ninth circuit rejected the various possible jurisdictional bases, including all those asserted by plaintiffs, but perceived an ex-

---

2. Such discrimination may be by direct, invidious policies or by benign policies which, on the basis of readily available statistical or other easily ascertainable evidence show a discriminatory effect on a defined class irrespective of the circumstances of any individual transaction between two parties. *See, e. g., Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) (The facially neutral requirement of an employment test or high school education operated to exclude blacks from employment or job transfers in a plant with a history of discrimination; a showing based upon the number of blacks qualifying for the jobs versus the number of whites established the racially discriminatory effect of the requirement, and the employer failed to show any "business necessity" for the requirements.)

3. Were this action limited to district court habeas corpus jurisdiction, as the ninth circuit limited it in *Nguyen Da Yen I,* the result would be the same. A habeas corpus action is less conducive to class treatment, and the court's scrutiny in the Rule 23 requirements would be at least as exacting as in ordinary situations. As the Harvard Law Review pointed out (in an article cited by the ninth circuit in *Nguyen Da Yen I* at p. 1203):

> As the variations in the relevant facts grow larger and the constitutional inquiry focuses more closely on the facts of each case, a group adjudication will become overburdened and less attractive. . . . In habeas corpus a preliminary investigation by the attorneys for the group could be used to gather data upon which the court could base an informed decision as to whether it would be efficacious to proceed with a group petition. This process should not prove overly burdensome, since merely an indication of the nature of the variances would seem sufficient. (Note, *Multiparty Habeas Corpus,* 81 Harvard L.Rev. 1482, 1488 (1968).)

In effect, the Babylift case has proceeded as a multiparty habeas corpus action since *Nguyen Da Yen I.* At this juncture, an examination of Rule 23's requirements for the maintenance of a class action is necessary. An awareness of the claims and defenses each party will make and preliminary insights into the nature of the proofs which will be forthcoming in this litigation has been made possible by such a treatment to date. However, there are now sufficient indications of the variances between each plaintiffs' claims.

ception on its own: the district court's habeas corpus power, 28 U.S.C. § 2241.[4] Not content to rely on this court's habeas corpus power[5] the plaintiffs amended their complaint[6] to include habeas corpus jurisdiction and the other bases of jurisdiction which the ninth circuit had disallowed. The only jurisdictional addition to the original complaint which the amendment makes, however, is the statement that "The rights at stake herein, exceed the value of $10,000 exclusive of interests and costs." (Amended Complaint, January 28, 1976, ¶ 14.)

For the purposes of this memorandum order, plaintiffs most likely intended, and this court therefore construes this sentence to mean that the rights at stake are valued, allegedly, at more than $10,000 *per plaintiff, named and unnamed.* Otherwise, jurisdiction would still be restricted to habeas corpus jurisdiction. *See Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).

■ Plaintiffs have called for federal question jurisdiction under 28 U.S.C. § 1331. Where the call is meritorious, the complaint need only show that a good faith nonfrivolous claim necessitates the application of federal law (*Baker v. Carr,* 369 U.S. 186, 199, 82 S.Ct. 691, 700, 7 L.Ed.2d 663, 674 (1962); *Bell v. Hood,* 327 U.S. 678, 681–682, 66 S.Ct. 773, 775, 90 L.Ed. 939, 942 (1946)) and that the value of the controversy exceeds the statutory threshold amount for

jurisdictional purposes. (*Hague v. CIO,* 307 U.S. 496, 507–508, 59 S.Ct. 954, 960, 83 L.Ed. 1423, 1432 (1939).)

In finding a sufficient factual basis for habeas corpus jurisdiction, the ninth circuit found that the involvement of the government in the alleged deprivation of liberty of which the named plaintiff children complain placed the children's fundamental human rights and Fifth Amendment rights to liberty and due process in issue. Additionally, whether these children are eligible for adoption will necessarily involve application of the Immigration and Nationality Act, 8 U.S.C. §§ 1101(b)(1)(F) and 1151(b). There is no question that this action arises under the Constitution and laws of the United States. At this juncture, the question of whether the action also arises out of treaty obligations of the United States, as plaintiffs have consistently maintained, need not be reached.

■ Whether jurisdiction exists under § 1331(a), in this case, depends upon whether the issue in controversy as to each plaintiff can be valued at an amount in excess of $10,000. The valuation process is not a simple matter of pleading practice (*see, e. g., Tanzymore v. Bethlehem Steel Corp.,* 457 F.2d 1320, 1323 (3d Cir. 1972)), but the difficulty of valuing intangible interests does not preclude justiciability under § 1331(a). *Spock v. David,* 469 F.2d 1047,

---

**4.** Civil rights actions require action under color of state law (28 U.S.C. § 1343(3) and 42 U.S.C. § 1983); the ordinary basis for civil rights actions against federal officials, 28 U.S.C. § 1331 (*see, e. g., Bivens v. Six Unknown Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971),) requires an allegation that the matter in controversy exceeds $10,000 in value, which plaintiffs' complaint did not contain; the provisions of the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* are not jurisdictional; the A.P.A., 5 U.S.C. § 701 *et seq.* was, in language remarkable for its noncommittal stance, not a sufficient jurisdictional basis; and other jurisdictional grounds suggested by the plaintiffs were rejected by the ninth circuit as "likewise problematical". (*Nguyen Da Yen I* at 1200–1202.)

**5.** While *Nguyen Da Yen I* found district court jurisdiction predicated on habeas corpus, that power was limited:

[The district court] may grant the writ only as to children presently detained within its territorial jurisdiction (there are still a substantial number), *Ahrens v. Clark,* 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), or to those who were within its jurisdiction when the application was filed, and subsequently removed. *Ex parte Endo,* 323 U.S. 283, 305–306, 65 S.Ct. 208 [219], 89 L.Ed. 243 [257] (1944). Almost half of the children airlifted were processed through the Northern District of California, and some may have been in the court's territorial jurisdiction when the complaint was filed. (*Nguyen Da Yen I* at p. 1204.)

**6.** Amended Complaint, No. C–75–0839–SW, filed January 28, 1976.

1052 (3d Cir. 1972). Plaintiffs have, in their memorandum in support of class denomination, sufficiently shown that their case of action is similar to causes of action, albeit allegorically similar, which have been found by federal courts to be susceptible of at least a valuation above the jurisdictional amount. (See Memorandum of Points and Authorities in Support of Motion to Denominate Class, at pp. 5–8.)

■ As Judge Peckham of this court has stated,

> fundamental constitutional rights, of which freedom of speech is one, are "almost by definition, worth more than $10,-000." . . . This is not a case involving only a very narrow aspect of speech, generally regarded as of limited value at best. *See, e. g., Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). The speech for which plaintiffs seek protection here has traditionally been regarded as fundamental, "the indispensable condition of nearly every other form of freedom." *Palko v. Connecticut,* 302 U.S. 319, 327, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). (*CCCO-Western Region v. Fellows,* 359 F.Supp. 644, 647–648 (N.D.Cal.1972).)

While the entire question of evaluating evanescent rights and intangible interests is difficult, it is not impossible to establish values. The importance of liberty and due process is only heightened by the very fragile and elusive nature of those rights when helpless children are involved, as plaintiffs assert is the issue here. The record before this court is conclusive: The value of the matter in controversy is considerably in excess of $10,000 for each of the three plaintiffs involved in this action. (*See Sullivan v. Murphy,* 156 U.S.App.D.C. 28, 478 F.2d 938, 960 (1973).) Jurisdiction in this action is adequately predicated upon 28 U.S.C. § 1331(a).[7]

7. The court does not need to consider the technical defense to habeas corpus jurisdiction raised in an amicus brief, that a petition for a writ of habeas corpus must be verified as plaintiffs' complaint here was not. Since this action is one with federal question jurisdiction, the technical aspects of habeas corpus jurisdiction as well as the limits on jurisdiction noted by the ninth circuit in *Nguyen Da Yen I* need not be problematical.

## MOTION TO STRIKE CERTAIN AFFIDAVITS

Defendant intervenors have moved, in conjunction with the papers filed for this class certification hearing, to strike certain affidavits on various grounds. This court is persuaded that the same defects permeate many of the affidavits which defendant intervenors themselves have submitted and upon which they rely. The motion is denied.

## MOTION TO INTERVENE

The motion of the Catholic Committee for Refugees, Inc., to intervene in this action pursuant to Rule 24, Federal Rules of Civil Procedure, is denied: The agency Friends of Children of Vietnam handled the adoption of the remaining three plaintiffs. This motion to intervene is moot and is therefore denied without prejudice at this time.

## FURTHER DISCOVERY

The further discovery into the factual situation involving the three plaintiffs will necessitate, it is anticipated, some inquiry in Vietnam as to whether the relatives of these children are willing to receive them back should we find that they are ineligible to remain in the United States. At several hearings, this court has entertained various proposals for tracing the relatives and, especially, biological parents of the plaintiffs. While a broad program of tracing as originally contemplated is no longer necessary, some form of tracing will have to be considered respecting the three plaintiffs.

This court is extremely concerned that direct inquiries might result in ferreting out latent guilt feelings on the part of parents or relatives in Vietnam who, for whatever reasons imaginable, released children for adoption by United States citizens in April 1975 or earlier.

In any case, there are great difficulties with the propriety of ordering our government to trace individuals in a foreign country with whom this government does not have diplomatic relations. The contacts would have to be in the form of requests, either directly to the foreign country's government or through an international agency, and would have to come from the government of the United States.

██ The conduct of foreign affairs and therefore the initiating of any international negotiations on behalf of the United States is within the exclusive province of congress and the executive branch of the government. *Sarnoff v. Connally,* 457 F.2d 809 (9th Cir. 1972), *cert. den.* 409 U.S. 929, 93 S.Ct. 227, 34 L.Ed.2d 186; *Epstein v. Resor,* 421 F.2d 930, 933 (9th Cir. 1970), *cert. den.* 398 U.S. 965, 90 S.Ct. 2176, 26 L.Ed.2d 549, (citing *Chicago & Southern Air Lines Inc. v. Waterman S.S. Corp.,* 333 U.S. 103, 111, 68 S.Ct. 431, 436, 92 L.Ed. 568, 576 (1948); *United States v. Curtiss-Wright Export Corp.,* 299 U.S. 304, 320–322, 57 S.Ct. 216, 221, 81 L.Ed. 255, 262 (1936). This court is not certain that it is proper for a district court to suggest to the federal defendants certain limitations to any tracing plan. However, there has been issued a protective order which forbids public disclosure of the names of persons listed in the files, since the files relate to minor children for whom this court has a special responsibility. The names of the children or the names of releasing parents (or non-releasing parents, if that is the determination made) of the plaintiffs should not be sent to Vietnam.

If the parents of the children did not want them to remain in Vietnam, such contact as could be directly made might awake guilt feelings which would prompt a desire for the return of the children that might in turn be an illusory desire. The children, if returned to an environment where they were not wanted, might not be in a satisfactory situation. Since the children are the plaintiffs, and are minors, it is the duty of this court to protect their interests insofar as their interests might conflict with the interests of the guardian ad litem or of plaintiffs' attorneys.

## CONCLUSION

This action arises out of the laws and constitution of the United States and a value in excess of $10,000 per plaintiff has been adequately shown. Jurisdiction is therefore grounded in 28 U.S.C. § 1331. Neither all of the requirements of Rule 23(a) nor any one of the requirements of 23(b) have been met, and therefore this is not properly a class action. The motion to strike affidavits has been denied. The plans discussed a prior hearings relevant to tracing relatives in Vietnam cannot at this time be finalized since the various proposals advanced did not contemplate limited tracing for a single family, the potential situation now present in this case. Therefore,

IT IS HEREBY ORDERED that this action may not be maintained as a class action pursuant to Rule 23, Federal Rules of Civil Procedure, and the action is dismissed as to the absent members of the class and as to the intervenors with the exception of Friends of the Children of Vietnam;

IT IS FURTHER ORDERED that the motion of the Catholic Committee for Refugees, Inc., to intervene is denied;

IT IS FURTHER ORDERED that the motions to certify this order for appeal pursuant to 28 U.S.C. § 1292(b), made orally at the last hearing, will be heard on Friday, March 19, 1976 at 1:00 p.m.;

IT IS FURTHER ORDERED that the motion to strike certain affidavits is denied, and arguments for all other pending motions will be scheduled for hearing on a date subsequent to March 19, 1976.