**FIFTH MOORINGS CONDOMINIUM, INC. et al., Plaintiffs,**

**v.**

**Ralph H. SHERE et al., Defendants.**

**No. 74–1269–CIV–CA.**

United States District Court,
S. D. Florida.

March 6, 1979.

Mark Schorr, Becker, Poliakoff & Sachs, P. A., Ft. Lauderdale, Fla., for plaintiffs.

Herbert L. Nadeau, Patton, Kanner, Segal, Zeller & King, Miami, Fla., for defendants.

## MEMORANDUM OPINION ON CLASS CERTIFICATION

ATKINS, Chief Judge.

Plaintiffs filed a class action complaint alleging that the defendants have engaged in a conspiracy in restraint of trade in violation of the Sherman Act, by tying the obligations of a 99 year lease of recreational facilities to the purchase of condominium apartments. The plaintiffs allege that the provisions of the recreational lease have been continually enforced against the condominium unit owners and their Association. For the reasons hereinafter delineated, a class was certified under Rule 23(b)(3) in the order entered February 12, 1979. This memorandum opinion supplements that order.

The Court, in an order issued by Judge Fulton, dated July 15, 1977, dismissed the Fifth Mooring Condominium Association as party plaintiff for lack of standing under the mandate of *Buckley Towers Condominium, Inc. v. Buchwald*, 533 F.2d 934 (5th Cir.), *cert. denied*, 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 571 (1976), and *Burleigh House Condominium, Inc. v. Buchwald*, 546 F.2d 57 (5th Cir.), *cert. denied*, 433 U.S. 909, 97 S.Ct. 2975, 53 L.Ed.2d 1093 (1977), but permitted the named individual plaintiffs to continue. The case was reassigned from Judge Fulton to this Court on January 8, 1979. A status hearing was held on February 8, 1979.

Defendants oppose the plaintiffs' motion for certification of this case as a class action. They argue that class action treatment is inappropriate since, (1) the maximum number of persons involved are not so numerous to make joinder impracticable; (2) there is no common question of law or fact common to the class; and (3) certification is improper since the existence of coercion must be established as to each individual plaintiff to prove the alleged tie-in.

At the outset, we make note that the burden is on the party invoking the class action procedure to show that the prerequisites of Rule 23 have been satisfied. *Blummenthal v. Great American Mortgage Investors*, 74 F.R.D. 508, 511 (N.D.Ga.1976); C. Wright & A. Miller, 7 Federal Practice and Procedure: Civil § 1759 (1972). Therefore, the named representatives must show that all of the requirements of Rule 23(a) are met, and that one of the categories of 23(b) is satisfied.

Although the defendants raise only these three points of argument, the plaintiffs' burden is to show all other prerequisites of Rule 23 are met. This Court finds such a showing has been made, and now turns to the three principal issues in question.

### I.

### *Numerosity*

The complaint filed by the plaintiffs alleges that there are 144 members of the class. The defendants contend that the numbers involved are insufficient as a matter of law to activate class action proceedings. Rule 23(a)(1) of the Federal Rules of Civil Procedure requires as a prerequisite of a class action that "the class is so numerous that joinder of all members is impracticable."

It is widely recognized that members alone are but one factor to consider in determining whether the "numerosity" requirement is satisfied. *Fox v. Prudent Resources Trust*, 69 F.R.D. 74, 78 (E.D.Pa. 1975), citing 3B Moore's Fed.Practice § 23.-05 (1978). The court in *Fox*, while certifying a class of 148, stated that generally classes that exceed 100 satisfy the requirement. Professor Miller has suggested that if the class exceeds 40 people there is sufficient "numerosity" under the Rule. A. Miller, An Overview of Federal Class Actions: Past, Present, and Future (1977). The judgment as to whether a given number is sufficient is not susceptible to hard and fast standards "since 'numerosity' is tied to 'im-

practicability' of joinder under specific circumstances." 3B Moore's Fed.Practice § 23.05 (1978).

■ "Impracticability" does not mean impossibility. It is sufficient if it is inconvenient or difficult to join all members of the class. The trial court has broad discretion to rule on whether joinder is "impracticable." *Pacific Fire Insurance Co. v. Reiner*, 45 F.Supp. 703 (E.D.La.1942); 3B Moore's Fed.Practice § 23.05 (1978).

■ In several recent cases this Court has found class actions a particularly appropriate vehicle in recreation lease tie-in actions. *Bennett v. Behring,* 466 F. Supp. 689 (S.D.Fla.1978); *Hillcrest East Ho 23, Inc. v. Hollywood Beach Hotel Dev. Co., Inc.,* 76–6504–Civ–JAG (S.D.Fla.1978); *Wolff v. Aventura-Villa Darade,* 76–1029–Civ–JE (S.D.Fla.1977); *Sea Monarch Condominium, Inc. v. Urbanek,* 76–6036–Civ–JLK (S.D. Fla.1976); *Coral Isle West Association, Inc. v. Cindy Realty, Inc.,* 430 F.Supp. 396 (S.D. Fla.1977). The nature of the action is one factor which court may weigh in determining whether the requisites of Rule 23(a)(1) are satisfied. *Davy v. Sullivan,* 354 F.Supp. 1320, 1325 (D.Ala.1973); C. Wright & Miller, 7 Federal Practice and Procedure: Civil § 1762 (1972).

■ In light of the attendant circumstances present in this case, this Court holds that sufficient impracticability of joinder exists to satisfy Rule 23(a)(1). The Court views the size of the class, the inconvenience of proceeding as a non-class action, and the nature of the case as being determinative facts in this holding.

## II.

### Questions of Law or Fact Common to the Class

Rule 23(a)(2) requires that there be "questions of law or fact common to the class" before a class action may commence. The defendants maintain that each lease must stand or fall on its own account since there is no proof that they were executed at the same time or were uniform in nature.

Plaintiffs argue that the legal issues involved and the facts needed to sustain their position, with regard to the issues, are common to all members of the class. They allege that the tying arrangement is established by the condominium documents and the circumstances surrounding their execution which are virtually identical in nature.

■ Plaintiffs' position is that the tying product is the condominium unit and the tied product is the lease of the recreational facilities. As the plaintiffs correctly point out in their memoranda of law, such a tying arrangement is *per se* unreasonable, *Northern Pacific Ry. Co. v. United States,* 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958), and, therefore, there is no need to show an unreasonable competitive effect. *Fortner Enterprises, Inc. v. United States Steel Corp.,* 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969).

■ To prove the tying arrangement is illegal *per se,* plaintiffs must prove that the defendants had sufficient economic power with respect to the tying product to restrain market competition appreciably in the market for the tied product, and that "[t]he volume of business affected by these contracts cannot be said to be insignificant or insubstantial." *International Salt Co. v. United States,* 332 U.S. 392, 396, 68 S.Ct. 12, 15, 92 L.Ed. 20 (1947); *Northern Pacific Ry. Co. v. United States, supra* ; *Standard Oil Co. v. United States,* 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371 (1949). In this regard, it will not be relevant to consider whether plaintiffs may have found the recreational facilities to be advantageous or that other condominiums were available without the tie-in. Nor is it necessary to refer to the scope of any particular market or to the share of the market that was foreclosed under *Fortner Enterprises, Inc. v. United States Steel Corp., supra.*

■ Proof of economic power sufficient to force a tie-in may be shown in two ways. The first is based on the existence of the arrangement. *Northern Pacific Ry. Co. v. United States, supra* 356 U.S. at 8, 78 S.Ct. at 519. "The very existence of this host of

tying arrangements is itself compelling evidence of the defendant's great power, at least where, as here, no other explanation has been offered for the existence of these restraints." The second may be inferred from the tying product's desirability to consumers or uniqueness of its attributes. *United States v. Loew's, Inc.*, 371 U.S. 38, 45, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962).

Thus, the contract which constitutes the tying arrangement and the actual purchases of the condominiums by consumers are evidence of the defendants' economic power. Under the foregoing analysis, sufficient commonality of legal and factual issues have been made out to satisfy Rule 23(a)(2). It is not necessary for all questions of law or fact to be common. *Mosely v. General Motors Corporation*, 497 F.2d 1330, 1334 (8th Cir. 1974). The common issues in this case are more than sufficient to satisfy the general requirements under that section. *See* 7 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1763 (1972).

As to the alleged factual inconsistency between plaintiffs' and defendants' position, this Court is convinced that there is a sufficient commonality of circumstances surrounding the execution and content of the documents to comply with the requisites of the Rule. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Miller v. Mackey International, Inc.*, 452 F.2d 424 (5th Cir. 1971).

Nor is it proprietous in this case for the trial judge to "engage in extensive fact finding prior to arriving at a class determination." *Lamphere v. Brown University*, 553 F.2d 714, 718 (1st Cir. 1977). This case was filed more than four years ago. During those four years, this motion has been outstanding nearly the entire time and the issue has been briefed and rebriefed, as well as being subject to oral argument. It is in the best interest of the parties and of the court system for an expeditious certification proceeding in light of this long delay.

"Rule 23(c)(1) specifically calls for a decision on the class issue as early as practicable in the litigation, . . . ." *Lamphere, supra* at 719. In spite of the defendants' factual contentions, this Court still finds the requirements of Rule 23(a)(2) sufficiently satisfied in the present instance.

### III.

### *Coercion*

The defendants argue further that certification is also improper because coercion is a necessary element of tying and needs to be established as to each individual plaintiff. Defendants cite to the cases of *Ungar v. Dunkin Donuts of America, Inc.*, 531 F.2d 1211, 1224 (3rd Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976), *Response of Carolina v. Leasco Response, Inc.*, 537 F.2d 1307 (5th Cir. 1976), and the line of cases that support that proposition.

Reliance on these cases in the present factual setting is clearly misplaced. As the Fifth Circuit stated in *Leasco* :

> "Of course, in certain circumstances, the element of coercion can be established on the basis of a formal agreement. Thus, where one product is sold on the express contractual condition that the purchaser purchase supplies for that product in the future only from the seller, the purchaser's future course of action is limited by the contract, and coercion is found in the agreement itself. *See e. g., Advance Business Systems & Supply Co. v. SCM Corp.*, 4 Cir. 1969, 415 F.2d 55. But no such situation is before us." *Id.* at 1328.

This proposition was also stated by the Third Circuit in *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3rd Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280 (1978), in distinguishing *Ungar* :

> "The principle of *Ungar* is that when a class action tie-in claim is made, *without basis in express agreement*, proof of salesmanship coupled with inequality of bargaining power does not prove the existence of the tie, but rather proof of actual coercion on an individual basis is necessary to prove the existence of a tie." *Id.* at 451 (emphasis added by the Court).

*In accord: Krehl v. Baskin-Robbins Ice Cream Co.*, 78 F.R.D. 108 (N.D.Cal.1978).

Nor is *Abercrombie v. Lum's*, 345 F.Supp. 387 (S.D.Fla.1972), *aff'd* 531 F.2d 775 (5th Cir. 1976) to the contrary. In *Lum's*, the plaintiffs were attempting to show an illegal tying arrangement arising from business conduct. There was no agreement common to all parties from which coercion could be found. Therefore, defendants' assertion that there need be individual proof of coercion in the present action is in error. The existence of the written recreation lease contract limits the purchaser's future course of action, so that individualized proof of coercion is not essential to establish an illegal tie-in.

### IV.

#### Certification Under 23(b)(1)

A. *The Threat of Incompatible Standards of Conduct Under 23(b)(1)(A) Has Not Been Established.*

Plaintiffs argue that certification is proper under both Rules 23(b)(1) and 23(b)(3). This Court finds insufficient evidence to support certification under 23(b)(1). Clause A of the Rule requires that prosecution of separate actions would cause a risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." This requirement is not simply that if one plaintiff may recover damages, while another may not, certification under 23(b)(1)(A) is proper. The Rule does not only bar the risk of "inconsistent and varying adjudications," but also requires "the threat of incompatible standards of conduct" on the part of the opposing party of certification. Potential inconsistency in monetary recovery alone is insufficient under this standard. *Bogosian v. Gulf Oil Corporation*, 62 F.R.D. 124, 131–32 (E.D.Pa.1973), *vacated on other grounds*, 561 F.2d 434 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). *Rodriguez v. Family Publications Serv., Inc.*, 57 F.R.D. 189, 192 (C.D.Cal. 1972).

The plaintiffs have not presented sufficient facts to substantiate their claim that such incompatible standards of conduct would result if the case did not proceed as a class action. Certification is therefore inappropriate under 23(b)(1)(A).

B. *Individual Adjudications Would Not Be Sufficiently Dispositive or Disruptive of the Interests of Nonparticipants For Certification Under 23(b)(1)(B).*

Nor have the plaintiffs established a right under 23(b)(1)(B). The plaintiffs have not shown as a "practical matter" individual adjudications would be dispositive of the interests of nonparticipants, "or substantially impair or impede their ability to protect their interest." There is no proof that a common fund would be exhausted by separate lawsuits. Nor is the possible effect of *stare decisis* on subsequent actions itself sufficient. *See Goldman v. First Nat. Bank of Chicago*, 56 F.R.D. 587 (D.Ill.1972); *Landau v. Chase Manhattan Bank*, 367 F.Supp. 992 (S.D.N.Y.1973); *Bogosian v. Gulf Oil Corp.*, 62 F.R.D. 124 (E.D.Pa.1973), *vacated on other grounds*, 561 F.2d 434 (3rd Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

### V.

#### Certification Under 23(b)(3)

This Court grants certification under 23(b)(3). It is clear from the discussion in Part II of this opinion that the common questions represent a significant aspect of this case. Although the predominance standard under 23(b)(3) is at best unclear, in the present case these questions have an overriding significance. While damages may have to be individually determined, *see Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 454–56 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978), common questions surrounding the contract will dominate the proceeding in both time spent and the focus of the inquiry. "[I]n the present case there are important common questions of law and fact affecting all

members of the class which override the factual differences regarding the damages suffered by each individual." *Foster v. City of Detroit*, 405 F.2d 138, 146 (6th Cir. 1968). Therefore, the need for predominance of common factual and legal issues of the class over those affecting individual members of the class is satisfied.

The Court also finds the class action procedure "superior to other available methods for fair and efficient adjudication of the controversy." The Court has already stated in Part I of this opinion that joinder is impracticable, and it is equally evident that individual actions would be too burdensome and inefficient in the present case. Nor is there any indication that intervention is a superior alternative. Such a procedure presupposes a group of persons economically powerful enough to take care of their own interests individually. *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir.), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1968); Frankel, Amended Rule 23 from a Judge's Point of View, 32 Antitrust L.J. 295, 298 (1966). "Yet if the purchasers fit this description, it is to be supposed that the defendants would join in demanding a class action since they could scarcely desire to defend separate actions by each party." *Esplin v. Hirschi, supra* at 101. Therefore, it is certain that a class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." Advisory Committee Notes to Rule 23, 39 F.R.D. 69, 102–3 (1966). *Dolgow v. Anderson*, 43 F.R.D. 472, 488 (E.D.N.Y.1968); *Esplin v. Hirschi, supra* at 101; C. Wright & A. Miller, 7 Federal Practice and Procedure: Civil § 1779 (1972).

For the foregoing reasons, this Court finds no acceptable alternative to proceeding under 23(b)(3). The class is therefore certified.

Defendants' motion for rehearing or certification under 28 U.S.C. § 1292(b) is DENIED.