See also, 495 F.Supp. 682.

Frances C. BARLOW et al., Plaintiffs,

v.

MARION COUNTY HOSPITAL DISTRICT d/b/a Munroe Memorial Hospital et al., Defendants.

No. 80–15–Civ–Oc.

United States District Court,
M. D. Florida,
Ocala Division.

Dec. 10, 1980.

Judy R. Collins, Robert H. Graddy, Trial Three Rivers Legal Services, Inc., Gainesville, Fla., for plaintiffs.

John E. Lawlor, III, Asst. U. S. Atty., Jacksonville, Fla., for the United States.

James A. Cornelius, Ocala, Fla., for hospital defendants.

Chester G. Senf, Asst. Gen. Counsel, Dept. of Health and Rehabilitative Services for State of Florida.

## OPINION AND ORDER

CHARLES R. SCOTT, Senior District Judge.

This case is before the Court upon plaintiffs' motion that this action be designated as a class action, pursuant to Rule 23(b)(2), Fed.R.Civ.P. and Local Rule 4.04.[1] The ac-

---

1. Rule 23, Fed.R.Civ.P., provides in pertinent part:

    (a) PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

    (b) CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

    \*    \*    \*    \*    \*    \*

    (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Local Rule 4.04, Middle District of Florida, provides in pertinent part:

    (a) In any case sought to be maintained as a class action pursuant to Rule 23, FED.R. CIV.P., the complaint shall contain, under a separate heading styled "Class Action Allegations" detailed allegations of fact showing the existence of the several prerequisites to a class action as enumerated in Rule 23(a) and (b), FED.R.CIV.P.

tion is brought by nine consumers of health care services against three groups of defendants, hereinafter referred to as the hospital defendants, the state defendants, and the federal defendants.[2] Class action designation has been placed in issue by the opposition filed by the hospital defendants on May 14, 1980, and the opposition filed by the federal defendants on November 14, 1980, in which the state defendants joined. Plaintiffs' motion will be granted, subject to amendment pursuant to Rule 23(c)(1), Fed.R.Civ.P.

Reduced to its simplest terms, the complaint alleges that the hospital defendants failed to provide the plaintiffs with free or reduced-cost medical services to which they were allegedly entitled as qualified, indigent persons under Title VI of the Public Health Service Act, as amended, 42 U.S.C. § 291 *et seq.*, commonly known as the Hill-Burton Act. The complaint further alleges that the state and federal defendants failed to comply with their statutory duties to monitor or investigate and enforce compliance with the Hill-Burton Act and pertinent regulations.

(b) Within 90 days following the filing of the initial complaint in such an action, unless the time is extended by the court for cause shown, the named plaintiff or plaintiffs shall complete all necessary discovery relating to class action issues and shall move for a determination under Rule 23(c)(1) as to whether the case is to be maintained as a class action. The motion shall be supported by a memorandum as required by Rule 3.01(a) of these rules; and, in addition to the showing of the prerequisite as required by subsection (a) of this rule, the motion shall contain a detailed description or definition of the class (and sub-classes, if any), and the number of persons in the class. If a determination is sought that the action be maintained under Rule 23(b)(3), the motion shall also suggest a means of providing, and defraying the cost of, the notice required by Rule 23(c)(2), FED. R.CIV.P.

(c) In ruling upon a motion made under subsection (b) of this rule, the court may allow the class action, may disallow and strike the class action allegations, or may order postponement of the determination pending additional discovery or such other preliminary procedures as may appear appropriate in the circumstances.

The named plaintiffs include two individuals and three family groupings. With regard to the individuals, Frances C. Barlow and James C. Bean, it is alleged that each of them received medical treatment at defendant hospital but did not receive and were not notified of their eligibility to receive the uncompensated services benefits for which they were allegedly eligible under the Hill-Burton Act. The complaint further alleges that both of these individuals subsequently had judgments entered against them in the state court as a result of the efforts of defendant hospital to collect the cost of treatment.

With respect to the family groupings of plaintiffs, the complaint alleges, with specificity, that one or more members of each of the three families received medical treatment at defendant hospital but did not receive and were not notified of their eligibility for uncompensated services benefits, to which all members of the family were allegedly entitled under the Hill-Burton Act at the time in which the medical treatment was rendered. The complaint further alleges, with regard to each of the three family groupings of plaintiffs, that judgments

2. The components of each group of defendants are set forth in the order of this Court entered July 29, 1980, in this action:

The first group consists of the hospital special tax district, Marion County Hospital District (the Hospital); the hospital administrator; and the members of the Board of Trustees of the hospital district. This group will be referred to as the hospital defendants. The second group is composed of the Florida Department of Health and Rehabilitative Services and the Secretary and Medical Facility Specialist of that department. The second group will be referred to as the state defendants. The third and final group consists of the United States Department of Health, Education and Welfare (HEW) and the Secretary of HEW. They will be referred to as federal defendants.

Although the Department of Health, Education and Welfare has been redesignated as the Department of Health and Human Services, the Court will refer to the agency by its former name, which was in effect at all times pertinent to this action.

were subsequently entered by the state court against the husband and wife in each family as a result of the efforts of defendant hospital to collect the cost of the medical services rendered in each case.

The complaint further alleges that the hospital was informed of the inability of each of these plaintiffs to pay the full cost of the treatment received by them or members of their family. Moreover, the complaint alleges that each plaintiff was in fact qualified for the free or reduced-cost medical services benefits under the Hill-Burton Act. Finally, it is alleged with respect to each plaintiff that the hospital failed to provide notice of potential eligibility for uncompensated services, pursuant to 42 C.F.R. § 53.111(i).

The named plaintiffs seek to represent a class of similarly situated individuals, seeking past, present and future relief. With regard to the hospital defendants, plaintiffs request the following relief:

(1) a declaratory judgment that these defendants violated the Hill-Burton Act and the rights of the plaintiffs to equal protection and due process,

(2) an injunction prohibiting continued violation of the Act and further collection activities of the type alleged, and

(3) a mandatory injunction requiring satisfaction of judgments obtained, compensation for money received in payment, correction in the future of any past deficit in the provision of free or reduced-cost services, cessation of all debt-collection actions, and the provision of written eligibility determinations with regard to the plaintiffs and the plaintiff class.

Plaintiffs seek the following relief against the state and federal defendants:

(1) a declaratory judgment that the state and federal defendants violated the Hill-Burton Act and the right of the plaintiffs to equal protection and due process,

(2) an injunction prohibiting future violations, and

(3) a mandatory injunction requiring the state and federal defendants to devise and submit for the respective agencies a plan for court approval, detailing the manner in which future monitoring or investigation and enforcement of compliance will be carried out.

By the order entered July 29, 1980, this Court denied the motions to dismiss filed by all defendants. The Court also required the plaintiffs to amend the complaint to allege compliance with the administrative remedies set forth in Section 1612 of the Public Health Service Act, as amended 42 U.S.C. § 300p–2(c) [redesignated 1627, 42 U.S.C. § 300s–6]. With regard to this latter requirement, the plaintiffs filed an amended complaint on August 18, 1980, alleging the exhaustion of the administrative remedy with respect to the claims of two of the named plaintiffs, Dan Begley and Ruth Begley. The exhaustion of administrative remedies by at least one member seeking to represent a class is a necessary prerequisite for standing to maintain a class action. *Swain v. Hoffman*, 547 F.2d 921, 924 (5th Cir. 1977). It is not necessary for each member of an alleged class to exhaust administrative remedies. *Eastland v. Tennessee Valley Authority*, 553 F.2d 364, 372 (5th Cir. 1977), citing *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 499 (5th Cir. 1968).

The plaintiffs now seek class action designation under Rule 23(b)(2). The special administrative characteristics of a class action impose unique supervisory duties upon the trial court. The court has a duty to make an independent inquiry with regard to the class nature of the suit, at least when the parties have placed the question in issue. *Satterwhite v. City of Greenville, Texas*, 557 F.2d 414 (5th Cir. 1977), *vacated and remanded on other grounds*, 578 F.2d 987 (5 Cir. 1978) (*en banc*). The court's duty gives rise to a corollary obligation of counsel to assist by filing an appropriate motion supported by proper evidence. *Satterwhite v. City of Greenville, Texas*, 578 F.2d at 999. The trial court should make findings on the record in support of a class action determination. Wright, C. & Miller, A., 7 A Federal Practice and Procedure 134 (1972). The

question before the court is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 have been met. *Miller v. Mackey International, Inc.,* 452 F.2d 424, 427 (5th Cir. 1971). Also, the court's determination is not etched in stone. Later circumstances can justify a court's reevaluation of the certification of an action. Rule 23(c)(1), Fed.R.Civ.P. *See, e. g., Guerine v. J & W Investment, Inc.,* 544 F.2d 863, 864 (5th Cir. 1977).

The Fifth Circuit encourages an evidentiary hearing on the issue of certification. In rare instances, the certification issue may be determined on the basis of verified pleadings or upon the affidavits and exhibits already on the record, *Satterwhite v. City of Greenville, Texas, supra,* 578 F.2d at 998; *Jones v. Diamond,* 519 F.2d 1090 (5th Cir. 1973) (*en banc*), but "if there is any genuine doubt with respect to the propriety of the class action, a preliminary evidentiary hearing is essential." *Satterwhite v. City of Greenville, Texas, supra.*

■ The party invoking Rule 23 has the burden of showing that all the prerequisites have been satisfied. *Wilson v. Kelley,* 294 F.Supp. 1005 (D.C.Ga.1968), *affirmed per curiam* 393 U.S. 266, 89 S.Ct. 477, 21 L.Ed.2d 425 (1968). In the instant case, the plaintiffs must show: (1) that the class is so numerous that joinder of all members is impracticable, (2) that there are questions of law or fact common to the class, (3) that the claims of the representative parties are typical of the claims of the class, and (4) that the representative parties will fairly and adequately protect the interest of the class. Rule 23(a), Fed.R.Civ.P. In addition, in order to maintain this class action under Rule 23(b)(2), the plaintiffs must show that the defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Rule 23(b)(2), Fed.R.Civ.P. Of course, the prerequisites listed in Rule 23 assume that the court has already determined that a class in fact exists and that the named plaintiffs are members of that class with standing to sue. The standing issue has been previously raised and determined in favor of the plaintiffs, as previously noted in this opinion and the opinion and order of this Court entered July 29, 1980. The Court will now address the remaining prerequisites.

■ The question of whether a class exists is a question of fact which ought to be determined on the basis of the circumstances of each case. In the instant case, the class and subclasses are defined as follows:

THE CLASS: All consumers of health care services who presently reside, will reside or have resided in the Marion County Hospital District and who are, have been, or will be financially eligible for uncompensated services at defendant Munroe Memorial Hospital under the Hill-Burton Act and those regulatory provisions established pursuant to the Act by the Department of Health, Education and Welfare and/or Florida Department of Health and Rehabilitative Services.

SUBCLASS I: All persons unable to pay for medical services who reside or have resided in the Marion County Hospital District and who sought and received treatment at defendant Munroe Memorial Hospital during the fiscal years 1975–76, 1976–77, 1977–78 and 1978–79 but who did not receive uncompensated services and/or notice of their potential eligibility for such services.

SUBCLASS II: All persons unable to pay for medical services who reside or have resided in the Marion County Hospital District and who sought and received treatment at defendant Munroe Memorial Hospital during the fiscal years 1975–76, 1976–77, 1977–78 and 1978–79 but who did not receive uncompensated services and/or notice of their potential eligibility for such services and against whom defendant Marion County Hospital District and/or defendant Munroe Memorial Hospital subsequently instituted legal proceedings and obtained judgments for services rendered.

SUBCLASS III: All persons unable to pay for medical services who will reside

in the Marion County Hospital District and who will be financially eligible to receive uncompensated services at defendant Munroe Memorial Hospital pursuant to the Act and those regulatory provisions which went into effect October 1, 1979.

The question of the existence of the alleged class turns, at this stage of discovery, upon the adequacy of the definition. The above definitions describe the class and subclasses with sufficient definiteness to allow identification of the class members. Accordingly, the Court finds that plaintiffs have alleged an existing class of persons that may be entitled to maintain a class action pursuant to Rule 23. *Cf., e. g., DeBremaecker v. Short,* 433 F.2d 733 (5th Cir. 1970) (class not adequately defined). *See* Wright, C. & Miller, A., 7 Federal Practice and Procedure 581 (1972).

A comparison of the above definitions with the allegations concerning the named plaintiffs and the relief which they seek indicates that these definitions describe a class of persons similarly situated to the named plaintiffs. The definitions of Subclasses I and II are taken directly from the allegations made with respect to each of the named plaintiffs. With regard to Subclass III, which defines a future subclass of persons, the Court finds that one or more of the named plaintiffs may be members of the future subclass. *See generally Smith v. Grady,* 411 F.2d 181 (5th Cir. 1969). The foregoing findings, however, do not displace the prerequisites to a class action more specifically set forth in Rule 23,[3] which the Court will now consider.

3. See Note 1, *supra.*

4. At the time of the hearing, there was pending before the Court plaintiffs' motion to compel complete answers to certain interrogatories directed specifically to discovery of additional class members. Defendant hospital had answered the interrogatories to the effect that the desired information was not available because the hospital had not retained records relating to the financial status of persons seeking treatment and, further, that records of state court judgments obtained by defendant hospital were on file at the county courthouse. That motion was addressed in a separate order and resolved in a manner favorable to the plaintiffs. There

## Rule 23(a)(1) Numerosity

The class must be so numerous that joinder of all members would be impracticable. At the hearing, plaintiffs' counsel represented to the Court that at the present stage of discovery plaintiffs could only offer a statistical estimate of class size.[4] The statistics are primarily derived from tables contained in *Health in Rural Florida: a Statistical Profile,* by Beaulieu & Crandall, published by the Center for Community and Rural Development, Institute of Food & Agricultural Sciences, University of Florida (1978). Of Marion County's 98,362 residents, approximately 24.7% or 24,295 live below the poverty level. *Id.,* Tables 3a, 4a. From this group of persons potentially eligible for Hill-Burton uncompensated services, plaintiffs subtract 14,059 Medicare enrollees (assuming for purposes of the estimate that all Medicare enrollees are below poverty level) and 6,665 Medicade recipients, leaving approximately 3,351 indigents in Marion County not covered by programs which would defray a portion, if not all, of the cost of their medical treatment. This is a conservative figure, in light of the assumption that all Medicare enrollees are below the poverty level; thus, any error would tend to increase rather than decrease the remaining figure. Recognizing that not all of these 3,351 persons would seek medical attention during the course of a year, the plaintiffs applied a ratio of one to 11 to this figure, resulting in an estimate that 305 of the 3,351 indigents would seek medical attention during the course of a year.[5] Of

is authority to support a finding that numerosity is presumptively established under similar circumstances. *See Cooper v. Califano,* 81 F.R.D. 57 (D.C.Pa.1978). The Court does not reach the question whether that presumption should be applied in the instant case, inasmuch as the Court has concluded that plaintiffs have achieved conditional satisfaction of the numerosity requirement.

5. In 1976, defendant hospital had 6,375 admissions or a hospitalization rate of one in every 11 persons, based on Marion County's 1976 population. These figures do not include persons treated in the emergency room but not admitted. North Central Florida Health Plan-

course, this estimate is based upon the assumption that the demand for medical services is uniform throughout the population, irrespective of an individual's economic circumstances. The 305-person figure represents the number of potential class members for a single year; thus, the total estimated class membership is 1,220 for the four fiscal years covered by this action.

■ Although plaintiffs bear the burden of showing that the number of class members would make joinder of all of them impracticable, the plaintiffs need not show the exact number. *Ligon v. Frito-Lay, Inc.*, 82 F.R.D. 42, 48 (N.D.Tex.1979). Plaintiffs must show some evidence of or reasonably estimate the number of class members. Mere speculation, bare allegations, and unsupported conclusions are inadequate. *Nguyen Da Yen v. Kissinger*, 70 F.R.D. 656, 661 (N.D.Calif.1976). Statistical estimates are not presumptively reasonable, *see e. g., Baxter v. Minter*, 378 F.Supp. 1213, 1216 (D.Mass.1974).

■ The reasonableness of the estimate in the instant case is supported by the source of the underlying statistics, an acceptable degree of precision in the calculation, and the use of neutral or hypothesis-defeating assumptions, resulting in a conservative estimate of the class size. Conditional acceptance of the estimate as proof of class size is further supported by the fact that discovery is not complete. The Court finds on the basis of plaintiffs' estimate that the class is so numerous that joinder of all members would be impracticable.

### Rule 23(a)(2) Common Questions

■ Common questions of law and fact are essential to the maintenance of a class action. Hospital defendants claim that there are no questions of law or fact common to the class because separate adjudications of fact are required to determine whether a person is a member of the class, citing *Metcalf v. Edleman*, 64 F.R.D. 407 (N.D.Ill.1974). Several courts have denied

class certification on similar grounds, but *Metcalf v. Edleman* provides the clearest articulation of the court's reasoning. *See, e. g., Nguyen Da Yen v. Kissinger, supra; Burnham v. Department of Public Health,* 349 F.Supp. 1335 (N.D.Ga.1972); *Banks v. Board of Public Instruction of Dade Co.,* 314 F.Supp. 285 (S.D.Fla.1970).

In *Metcalf v. Edleman*, plaintiff welfare recipients brought an action against state welfare officials alleging that they could not obtain housing compatible with health and well-being under the existing shelter system provided by defendants' regulations. The system set a dollar maximum allowance which could only be exceeded by qualifying for an exception. The district court was obviously dissatisfied with the definitions offered for the plaintiff class, one illustration of which is: "those public aid recipients who are unable to obtain housing compatible with health and well-being with the allowance provided by defendant." The district court denied certification, stating:

A class must be capable of concise and exact definition. [citations omitted] Each definition proffered by plaintiffs calls for a conclusion, e. g., who were the recipients who could not obtain housing compatible with health and well-being, .... Before an adequate determination can be made of who is a class member, this court would be required to make an adjudication that a particular class member was denied a livelihood consistent with health and well-being because such plaintiff was not granted a shelter exception.

The inability to define concisely a proper class to bring this action precludes the plaintiffs from fulfilling all the requirements of Rule 23. Obviously, there is no common issue of law since separate adjudications are required to determine if a particular plaintiff is being deprived of a livelihood compatible with health and well-being and is thus a member of the class. Also, this court can find no issue of fact common to the class members

ning Council Annual Hospital Survey, 1976; DHRS OFFICE OF LICENSURE & CERTIFI-

CATION, "Annual List of Licensed Hospitals," July 1976.

since varying circumstances surround the denial of the individual shelter exceptions.

*Metcalf v. Edleman, supra* at 409–10.

The Court entertains some doubt whether the proposition for which *Metcalf v. Edleman* is cited is generally applicable to the requirement of Rule 23(a)(2), and, more particularly, whether the circumstances of the instant case support its application here. First, the district court's observations seem to pertain more to the adequacy of the definition of the class than of the existence of common questions. The appropriate conclusion would appear to be that a class member could not be identified on the basis of vague definitions, the elements of which would require separate adjudication. Second, this Court is not persuaded that simply because some threshold questions must be answered in order to determine class membership that it necessarily follows that there are no common issues of fact or law among potential class members. The distinction between the instant case and *Metcalf v. Edleman* may be one of degree, however.

The definitions in the instant case are adequate. They are neither vague nor overbroad. Like every definition in every class action, they present certain criteria for class membership. Defendants urge that threshold adjudications of eligibility for and denial of uncompensated services under the Hill-Burton Act are necessary with respect to each potential class member. Eligibility is one critical element of the definition of the class. Denial of uncompensated services benefits is an element in the definitions of Subclasses I and II. Both are elements of proof in the claims of the named plaintiffs. At this stage it does not appear that each class member would present a set of relevant facts so unique as to suggest that each claim should be tried independently. *Cf., e. g., Nguyen Da Yen v. Kissinger, supra* at 663 (each case had completely unique set of facts, even though same law would be applicable). It is conceivable that threshold questions presented by the definition of the class could be too complex, or so collateral to the elements of proof on the merits that separate adjudication of the claims would be indicated. Though it is not clear from the opinion, *Metcalf v. Edleman* may have exemplified that situation. This case does not. The definition of the class is adequate and the determination of eligibility and denial of uncompensated services do not preclude the existence of common issues of fact and law, as alleged in paragraphs 31 and 35 through 65 of the complaint. *Johnson v. American Credit Co.*, 581 F.2d 526, 532 (5th Cir. 1978). The provision is satisfied if some common issues exist. *Fifth Moorings Condominium, Inc. v. Shere*, 81 F.R.D. 712, 715 (S.D.Fla.1979).

Federal defendants specifically oppose the certification of the class as defined insofar as it contains Subclass III, which included future class members. Federal defendants point out that while the defendant hospital's responsibilities to existing class members were governed by 42 C.F.R. § 53.111 until October 1, 1979, defendant hospital's responsibilities to persons seeking treatment after that date, which would include all potential class members defined in Subclass III, are governed by the current regulations at 42 C.F.R. Part 124. Federal defendants note that the new regulations establish a significantly different set of requirements.[6] Therefore, the regulatory re-

---

**6.** The change in presumptive compliance guidelines is noteworthy. The old regulations provided that a hospital would be deemed in presumptive compliance with its assurances to provide a "reasonable volume of uncompensated services to persons unable to pay therefor" if it met the criteria set forth in either of two options:

(1) by budgeting and making available on request "uncompensated services at a level not less than the lesser of 3 percent of operating costs or 10 percent of all Federal assistance provided", or

(2) by certifying "that it will not exclude any person from admission on the ground that such person is unable to pay for needed services and that it will make available to each person so admitted services provided by the facility without charge or at a charge below reasonable cost which does not exceed any such person's ability to pay therefor" as determined by crite-

quirements determinative of the claims of individuals who received treatment under the old regulations differ materially from those applicable to claims of individuals who will receive treatment from Hill-Burton assisted facilities under the current regulations, so the argument goes. Plaintiffs argue that the regulatory changes of October 1, 1979, are immaterial to the basic issues presented in this action, that is, failure to comply with the Hill-Burton Act and failure to monitor or enforce Hill-Burton compliance.

This action challenges the conduct of the various defendants, not the validity of the regulations. Nevertheless, the conduct challenged here cannot be set apart from the regulations which provide a significant portion of the legal framework within which the conduct takes place. The question is, then, whether the regulation changes are material and relevant to the legal and factual issues presented by the claims of the named plaintiffs. The Court cannot rule upon the significance of the regulatory changes at this time. The claims of the named plaintiffs must be further developed. Accordingly, the Court finds that there are questions of law and fact common to the class, as defined to include Subclasses I and II. The Court further finds that there are common questions of law and fact shared by the class and Subclass III, upon condition that the regulatory changes of October 1, 1979, are shown by subsequent evidence to be immaterial and irrelevant to the claims of Subclass III. The entire class undoubtedly shares common and legal and factual questions with regard to the broad injunctive relief which is the focus of this action. As the Court has previously noted, the questions of law and fact raised in the action need not be common to all class members so long as some common issues exist. *Johnson v. American Credit Co., supra*; and *Fifth*

*Moorings Condominium, Inc. v. Shere, supra.*

### Rule 23(a)(3) Typicality

█ The typicality requirement is not well-defined in the case law. It bears an obvious facial relationship to the commonality requirement, a fact which apparently moved both hospital defendants and federal defendants to deal with both of these requirements in a single argument. It has been suggested that the typicality requirement "may have independent significance if it is used to screen out class actions when the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are raised." Wright, C. & Miller, A. 7 Federal Practice and Procedure 614 (1972). To the extent this may be correct, federal defendants' objections to commonality might have been more appropriately made with respect to the requirement of typicality. In any case, the language of the rule itself indicates that a consideration of typicality must include a comparison of the claims of the representative plaintiffs with the claims of the class, as derived from the definitions of the class and subclasses. *See Nguyen Da Yen v. Kissinger, supra* at 664–65.

There can be no doubt that the named plaintiffs are typical of the claims of class members in Subclasses I and II. The definitions of those subclasses are derived directly from the allegations concerning the named plaintiffs. The regulatory changes which took effect on October 1, 1979, raise difficulties with respect to the claims of class members in Subclass III. The claims of the representative parties are typical of the claims of Subclass III insofar as those claims seek broad injunctive relief from future violations of the Hill-Burton Act and

---

ria established by the State plan. 42 C.F.R. § 53.111(d).

The second option, known as the "open door option," was the one chosen by defendant Hospital. This option for compliance was eliminated in the new regulations, leaving only the first option (also modified to allow for adjustment

of the value of Federal assistance to reflect current dollars) as a means for achieving compliance. 42 C.F.R. § 124.503(a).

Federal defendants referred to other changes affecting the state and federal agencies' ability to monitor and enforce compliance as well.

assurance that state and federal defendants will effectively monitor, investigate, and enforce compliance with the Act. The difficulty arises primarily with respect to the representatives' claims for satisfaction of judgments, refund of collected monies, compensation for seized property, and other specific relief set forth in paragraph 9 of the complaint at pages 31–32.

Again, the Court must conclude that it would be premature to address the questions presented by the regulatory changes before plaintiffs have had the opportunity to further develop their claims. Accordingly, the Court concludes that the claims of the representative parties against all defendants are typical of those of the class as defined to include Subclasses I and II. The Court finds that the claims of the representative parties are typical of the claims of Subclass III, on condition that the regulatory changes which took effect on October 1, 1979, are ultimately shown to have no significant impact upon the claims of Subclass III.

Some courts have interpreted typicality to mean that the representatives of the class "must not have interest antagonistic to or in conflict with those they seek to represent." *Cannon v. Texas Gulf Sulphur,* 47 F.R.D. 60–63 (S.D.N.Y.1969). Those concerns, however, would seem more properly dealt with under the Rule 23(a)(4) requirement that the representatives fairly and adequately protect the interests of the class.

### *Rule 23(a)(4) Adequate Representation*

■ The adequacy of representation requirement includes not only the likelihood that the representative parties will adequately pursue the claims and interests of the class but also the adequacy of legal counsel representing the named plaintiffs. The Court has no reservations or misgivings concerning the adequacy of the legal representation on either side in the instant case.

As noted in the preceding discussion, the adequacy of representation requirement has been interpreted to mean that there is no conflict of interest between the representative parties and the class they seek to represent. "If the class members themselves have conflicting rights in the subject matter of the litigation so that respective priorities among the class members must be determined in the action, then claims of a right to represent the class often will be found to be improper." Wright, C. & Miller, A., 7 Federal Practice and Procedure 647 (1972). Federal defendants note that the current regulations, effective October 1, 1979, allow a ceiling on the amount of services available to eligible members. Potential class members as defined in Subclass III would be affected by these provisions, inasmuch as those members who apply before the available amount has been exhausted will benefit to the detriment of those who apply subsequently. Thus, the argument goes, there will be competition and conflict among similarly situated persons within Subclass III.

The conflict argued by federal defendants is not material to the satisfaction of the Rule 23(a)(4) requirement of adequate representation. The conflict is not of such a nature that the respective priorities among class members would have to be determined in this action. Accordingly, the Court finds that the interests of the class members in this suit are in no way adverse and that there is no reason to believe that the interests of the class would not be fairly and adequately protected. *Epstein v. Weiss,* 50 F.R.D. 387, 392 (E.D.La.1970).

### *Rule 23(b)(2) Appropriateness of Injunctive/Declaratory Class Relief*

■ The complaint alleges that, notwithstanding the class plaintiffs eligibility for Hill-Burton uncompensated services, the uncompensated services benefits (free or reduced-cost services) were denied, and the class plaintiffs were required to assume financial responsibility for the cost of treatment. On its face, the complaint alleges a pattern of activity adverse to the class as a whole. The nature of the relief sought is primarily declaratory and injunctive, although certain monetary relief is sought by the named plaintiffs and members of Subclass II. The broad injunctive and declara-

tory relief is sought on behalf of all class members. The fact that some members of the plaintiff class seek monetary remedies is merely incidental to the action's primary purpose and does not defeat certification under Rule 23(b)(2). *Elliott v. Weinberger*, 564 F.2d 1219 (9th Cir. 1977), *cert. denied* 439 U.S. 816, 99 S.Ct. 75, 58 L.Ed.2d 106; *Bolton v. Murray Envelope Corp.*, 553 F.2d 881 (5th Cir. 1977) (backpay); *Garcia v. Rush-Presbyterian-St. Luke's Medical Center*, 80 F.R.D. 254, 270 (N.D.Ill.1978). This action is particularly appropriate to be maintained as a class action under Rule 23(b)(2). *O.M.I.C.A., Inc. v. James Archer Smith Hospital*, 325 F.Supp. 268, 270–71 (S.D.Fla.1971).

### Conclusion

The Court finds that the named plaintiffs are members of an adequately defined, existing class of persons with standing to sue on behalf of the class. The Court further finds that all the prerequisites to the maintenance of a class action pursuant to Rule 23(a) and (b)(2) have been met, subject to the conditions specified in the foregoing opinion with reference to the requirements of numerosity, commonality, and typicality, and subject to the authority of the Court to amend this determination pursuant to Rule 23(c)(1). The Court concludes, therefore, that this action may properly be maintained as a class action.

Accordingly, it is

ORDERED:

1. The plaintiffs' motion for designation as a class action is granted.

2. This action may be maintained as a class action, subject to the conditions specified in the foregoing opinion, to-wit: (a) that subsequent evidence supports the estimate of numerosity of the plaintiff class, (b) that subsequent evidence supports the plaintiffs' contention that the regulatory changes, effective October 1, 1979, are immaterial to the common factual and legal questions raised by the claims of the class and of Subclass III, and (c) that subsequent evidence supports the determination that the regulatory changes, effective October 1,

1979, do not render the claims of Subclass III atypical of the claims of the representative parties.

