NATIONAL ASSOCIATION OF RADIA-
TION SURVIVORS, a California non-
profit corporation; Swords to Plow-
shares Veterans Rights Organization, a
California nonprofit corporation; Don
E. Cordray, an individual; Albert R.
Maxwell, an individual; Reason F. Wa-
rehime, an individual; Doris J. Wilson,
an individual, Plaintiffs,

v.

Harry N. WALTERS, Administrator of
The Veterans Administration; the Unit-
ed States of America; the Veterans Ad-
ministration; Paul D. Ising, Director,
San Francisco Regional Office, the Vet-
erans Administration, Defendants.

No. C–83–1861–MHP.

United States District Court,
N.D. California.

May 7, 1986.

James T. Garrett, Gordon P. Erspamer, Michael F. Ram, Morrison & Foerster, San Francisco, Cal., for plaintiffs.

George Christopher Stoll, Asst. U.S. Atty., San Francisco, Cal., Edward J. Luke, Deputy Asst. Gen. Counsel, Veterans Dept., Washington, D.C., Jack Nagan, Office of Dist. Counsel, Veterans Admin., San Francisco, Cal., for defendants.

PATEL, District Judge.

This action is before the court on plaintiffs' motion for class certification. For the reasons discussed below, the court concludes that plaintiffs have made a sufficient showing to justify conditional certification of the proposed class.

PROCEDURAL HISTORY

This action was originally filed by two veterans' organizations and four individuals challenging the constitutionality of 38 U.S.C. §§ 3404 and 3405, which impose a $10.00 fee limit for all work performed by an attorney in representing a veteran pursuing Service-Connected Death and Disability ("SCDD") claims before the Veterans Administration ("VA"). Plaintiffs alleged that the fee limitation effectively precluded them from obtaining counsel, thereby depriving them of their right to procedural due process under the Fifth Amendment and their First Amendment rights to petition the government for redress of grievances and to associate freely. Plaintiffs challenged the fee limitation both "on its face" and "as applied" to them.

On June 12, 1984, this court granted plaintiffs' motion for a preliminary injunction, finding that plaintiffs had demonstrated a high likelihood that they would prevail on both their due process and First Amendment claims, and that they would suffer irreparable injury if the injunction was not granted. *National Association of Radiation Survivors v. Walters*, 589 F.Supp. 1302 (N.D.Cal.1984).

On June 28, 1985 the Supreme Court, in four separate opinions, reversed this court's preliminary injunction order. *Walters v. National Association of Radiation Survivors*, 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985). A majority of the Court held that the fee limitation was not unconstitutional on its face and that a nationwide injunction granting "categorical relief" was therefore inappropriate. Justice O'Connor, in a concurring opinion, made clear her understanding that the Court was not determining the merits of plaintiffs' "as applied" claims and that "the claims of any individuals or identifiable

groups … remain open on remand." 105 S.Ct. at 3197. With respect to the claims of any "identifiable groups," Justice O'Connor suggested that plaintiffs could prevail if they could demonstrate the existence of a "subclass of complex claims that by their nature require expert assistance beyond the capabilities of service representatives to assure the veterans ' "[a] hearing appropriate to the nature of the case." ' " 105 S.Ct. at 3198 (citations omitted). Justice O'Connor noted, however, that plaintiffs' claims had not been framed as a class action and that this court's findings and relief were not narrowly drawn to reach only a discrete class of complex cases. Thus, Justice O'Connor concluded, "[i]n its present posture, this case affords no sound basis for carving out" a subclass of complex cases with respect to which application of the fee limitation might be unconstitutional. *Id.*

Following the Supreme Court's decision, plaintiffs amended their First Amended complaint to add a class claim on behalf of all "Ionizing Radiation Claimants." Defendants moved to dismiss plaintiffs' Seconded Amended Complaint, arguing that the Supreme Court had rejected plaintiffs' constitutional claims on their merits. On June 22, 1986, this court granted defendants' motion with respect to plaintiffs' facial challenge, but denied the motion with respect to the "as applied" claims.

Plaintiffs now move for certification of the following class:

All persons who currently have pending or who file or re-open VA service-connected death and disability compensation 1 ("SCDD") claims based on exposure to nuclear radiation from government atomic bomb tests in the Marshall Islands or the Nevada Test Site or from the atomic bombs dropped on Hiroshima and Nagasaki in 1945 ("Ionizing Radiation Claims"). The class also includes all persons who are receiving or receive SCDD for an Ionizing Radiation Claim but: (1) whose compensation has been reduced or is threatened with reduction, or (2) who have formally contested, or formally con-

test, the disability rating issued by the VA or the period of retroactive compensation.

(Plaintiffs' Reply at 14–15). In short, the proposed class consists of all past, present and future ionizing radiation claimants who have, or will have, some form of "active" claim relating to SCDD benefits before the VA.

Defendants oppose class certification, contending that plaintiffs' proposed class fails to meet any of the requirements of Rule 23 and is inconsistent with the Supreme Court's decision in this case.

## DISCUSSION

### Requirements of Rule 23(a)

All motions for class certification must meet the requirements of Rule 23(a), which provides that a class action may be maintained if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

### 1. Numerosity

■ Although mere speculation as to the number of class members is not sufficient to satisfy Rule 23(a)(1), see 7 C. Wright & A. Miller, Federal Practice and Procedure § 1762 (1985), "the exact size of the class need not be known so long as 'general knowledge and common sense indicate that it is large.'" Perez-Funez v. District Director, INS, 611 F.Supp. 990, 995 (C.D.Cal. 1984) (quoting Orantes-Hernandez v. Smith, 541 F.Supp. 351, 370 (C.D.Cal.1982). The outer limits of the class size in this case are relatively certain. According to defendants' figures, approximately 233,000 veterans participated in the government's atomic bomb tests and the occupation of Hiroshima and Nagasaki. Thus, the class size is somewhere between 233,000 and 6— the number of named plaintiffs in this action. Although it is impossible to tell pre-

cisely where the actual class size falls on this continuum, there is ample reason to believe that it is sufficiently large to meet the requirements of Rule 23(a)(1).

The proposed class in this case includes those ionizing radiation claimants who seek to reopen claims already denied, those with claims currently pending and those who may file claims at some future date, as well as some veterans who are receiving benefits but who believe they are not receiving all the benefits to which they are entitled. 3,875 ionizing radiation claims have already been decided by the VA and all but 16 of them have been denied. Thus, there are presently 3,859 veterans who may seek to reopen their claims if permitted to retain an attorney for that purpose. If only 1% of these claimants actually seek to reopen their claims, the class would be sufficiently large, without considering pending and future claims. Significantly, pursuant to a settlement agreement reached in Gott v. Walters, Nos. 82–1148, 82–1159, 82–1454 (D.C.Cir.), an action challenging the VA's ionizing radiation regulations, many of these claimants will soon be personally notified by the VA of their right to seek a reopening of previously denied claims and the procedures they must follow.

■ Although the precise number of pending claims is not known, defendants conceded at oral argument that the number is substantial. Moreover, as defendants also conceded, they have at their disposal the information necessary to determine the number of pending claims but, to date, have made no attempt to do so. Under these circumstances, defendants can hardly complain that plaintiffs have failed to establish the number of pending claims. See, e.g., Folsom v. Blum, 87 F.R.D. 443, 445 (S.D.N.Y.1980) (rejecting as "pure sophistry" the government's contention that class certification must be denied because plaintiff was unable to state the exact number of persons affected by the challenged practice, noting that the government had the means to identify the affected individuals at will). Furthermore, if in fact neither

party can count, let alone identify, those individuals with pending claims, this alone suggests joinder would be impracticable. *See Phillips v. Joint Legislative Committee on Performance and Expenditure Review,* 637 F.2d 1014, 1022 (5th Cir.1981), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982).

Finally, although there is, of course, no way to determine the number of future claimants, several factors suggest that the number will be quite large. These factors include the recent surge in awareness and political and legal activity in the area of "atomic veterans," the long latency period of many radiation-related diseases, and the fact that there are over 200,000 potential claimants, thousands of whom have already filed claims.

■ In short, although the precise number of class members is not known, "general knowledge and common sense indicate" that the class is large enough to make joinder impracticable.[1] The court need not rely on class size alone, however. Although the requirement of 23(a)(1) is often referred to as the "numerosity requirement," the true focus of 23(a)(1) is the impracticability of joinder. Thus, in determining whether joinder is impracticable in a particular case, the court should consider not only the class size but other factors as well, including the geographical diversity of class members, the ability of individual members to institute separate suits, and the nature of the underlying action and the relief sought. *See e.g., Garcia v. Gloor,* 618 F.2d 264, 267 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981); 1 H. Newburg, *Class Actions* § 3.06 (2d ed. 1985); 7 C. Wright &

A. Miller, *Federal Practice and Procedure* § 1762 (1972).

At defendants' suggestion, plaintiffs included all future ionizing claimants in the proposed class. "[W]here the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met," regardless of class size. *International Molders' and Allied Workers' Local Union No. 164 v. Nelson,* 102 F.R.D. 457, 461 (N.D.Cal.1983) (citing *Jack v. American Linen Supply Co.,* 498 F.2d 122, 124 (5th Cir.1974)). *See also Smith v. Heckler,* 595 F.Supp. 1173, 1186 (E.D.Cal.1984) ("Joinder in the class of persons who may be injured in the future has been held impracticable, without regard to the number of persons already injured"); *Ellis v. Naval Air Rework Facility,* 404 F.Supp. 391, 396 (N.D.Cal.1975) ("Since there is no way now of determining how many of these future plaintiffs there may be, their joinder is impracticable").

The nature of the action and the relief sought also support a finding that the requirements of Rule 23(a)(1) have been met. Plaintiffs challenge the fee limitation on constitutional grounds and seek both injunctive and declaratory relief. As one commentator has noted, "class actions challenging statutes or administrative procedures on constitutional grounds, have been recognized as natural class actions, and inclusion in the class of potentially aggrieved individuals has often been regarded as sufficient to meet the Rule 23(a)(1) impracticability requirement." 1 H. Newburg, *Class Actions* § 3.07 (2d ed. 1985). *See also Smith v. Heckler,* 595 F.Supp. at 1186 ("[S]pecial consideration applies to actions seeking declaratory or injunctive relief

---

[1]. *Nguyen Da Yen v. Kissinger,* 70 F.R.D. 656 (N.D.Cal.1976), *app. dismissed,* 602 F.2d 925 (9th Cir.1979), relied on by defendants, is distinguishable. The plaintiffs in *Nguyen Da Yen* were "able to say only that at least a few of the children here as a result of the Vietnamese orphan airlift are similarly situated to the named representatives." *Id.* at 662. The court found no basis on which to estimate the number of class members or even to determine whether the class included more than ten members. As

already discussed, based on the figures that *are* available to the court in this case and the nature of both the class composition and the underlying claims, there is good reason to believe that the proposed class is sufficiently large to make joinder impracticable, even though the precise size of the class is unknown. Moreover, as will be discussed below, joinder is impracticable in this case for a number of other reasons which were either not applicable or were not considered by the court in *Nguyen Da Yen.*

against conduct that is likely to cause future harm").

Geographical diversity is another relevant consideration. This is a nationwide class action brought on behalf of all ionizing radiation claimants. Because, by definition, all such claimants were serving in the military at the time of their alleged exposure to nuclear radiation, it is reasonable to assume that they are spread out across the United States, thus making joinder less practicable.

Finally, the court notes that many, if not most, of the claimants may well be unable to bring individual suits. The class members are all disabled veterans or their widows. It is unlikely that many of these claimants have the financial resources to mount an individual constitutional challenge to the fee limitation.

■ Taken together, these factors support a finding that joinder would be impracticable, regardless of the class size. When considered in conjunction with those factors which suggest the class is, in fact, quite large, it is clear that the requirements of Rule 23(a)(1) have been met.[2]

### 2. *Commonality*

■ In order to meet the commonality requirement of 23(a)(2), plaintiffs must establish that there are questions of law *or* fact common to the class as a whole. Rule 23(a)(2) does not require that all members of the class be identically situated; the requirement is met so long as there are substantial questions of law or fact common to all. *Harris v. Palm Springs Alpine Estates,* 329 F.2d 909, 914 (9th Cir. 1964).

■ There can be no doubt that there exists a substantial question of law common to all class members: whether the fee limitation, as applied to ionizing radiation claimants, violates the due process clause and the First Amendment by precluding them from retaining counsel in connection with their SCDD claims. In *Cleaver v. Wilcox,* 499 F.2d 940 (9th Cir.1974), the plaintiffs brought a class action on behalf of indigent parents who were parties to dependency proceedings, alleging that they had a constitutional right to appointed counsel in such proceedings. The Ninth Circuit upheld the district court's finding that the requirements of Rule 23(a)(2) had been met, stating: "The principal question of law is common to all members. All assert a constitutional right to appointed counsel." *Id.* at 943. Here, the class members all assert a constitutional right to retain counsel.

In addition to this fundamental common issue of law, plaintiffs identify the following common issues of fact: (1) the factual complexity of the underlying Ionizing Radiation Claims; (2) the VA's lack of resources to develop or refusal to develop the facts necessary to establish Ionizing Radiation Claims; (3) the legal complexity of the VA's ionizing radiation regulations and the considerable judgment involved in applying the law to the facts; (4) the radiogenic nature of the diseases and the lengthy latency periods associated with such diseases; (5) the difficulty of locating and obtaining complete medical records for the claimant's period of service; (6) the almost universal need for expert testimony; (7) the need to refute Defense Nuclear Agency dose reconstructions with testimony from qualified health experts; (8) the inability of service representatives to adequately represent Ionizing Radiation Claimants and claimants' dissatisfaction

---

**2.** Defendants contend that there is one subclass—those persons receiving SCDD benefits for ionizing radiation who are either being threatened with reduction or are contesting their disability rating—which clearly fails to meet the numerosity requirement because only 16 such claims have been allowed. Even assuming that these claimants are properly characterized as a "subclass," and that joinder of all

16 would not be impracticable, the proposed class includes not only those who are currently receiving benefits for ionizing radiation but also those who, in the future, receive such benefits. Thus, the class is not limited to 16 members and includes future claimants whose inclusion makes joinder inherently impracticable (see discussion, *infra* ).

with the services performed by service representatives; (9) the difficulty of placing veterans at exposure sites due to inadequate DOD record-keeping; (10) obstacles placed by DOD/DNA to make the claims process more difficult, such as the necessity of submitting a FOIA request to obtain a government dose reconstruction; and (11) the existence of physical disabilities that prevent claimants from prosecuting their claims.

(Plaintiffs' Brief at 8–9).

■ All of these issues relate to the ultimate issue, at the heart of plaintiff's constitutional challenge, whether ionizing radiation claims are, by their very nature, so complex that the assistance of an attorney is necessary to ensure a fair and constitutionally adequate hearing. As such, these factual issues are clearly common to all ionizing radiation claimants, regardless of any variations in the facts or circumstances of each claimant's individual claim *for benefits*. Defendants might ultimately prevail on their argument that ionizing radiation claims are not so inherently complex as to require the assistance of counsel in every case. But this argument goes to the very merits of plaintiff's constitutional claim— not to the issue of commonality or the propriety of certifying a class action. The cases cited by defendants are clearly distinguishable. *Stewart v. Winter*, 669 F.2d 328 (5th Cir.1982), involved a challenge to the conditions in all county jails in all 82 counties in the state. The Fifth Circuit simply upheld the district court's finding that " 'the physical and environmental conditions at county jails in the state are so divergent that it is virtually impossible to state with certainty what may be common issues,' " adding that although Rule 23(a)(2) does not require complete identity of legal claims, "it does require that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Id.* at 335. Here, plaintiffs have identified a host of legal and factual issues whose resolution will affect the putative class members.

In *Love v. Turlington*, 733 F.2d 1562 (11th Cir.1984), the plaintiffs challenged the state's use of the SSAT–I to create a pool of students "at risk" of not receiving a high school diploma. The Eleventh Circuit held that the district court properly denied certification because the determination of whether a student who failed the test would ultimately be eligible for a diploma was made by individual teachers on the basis of a student's individual achievements and unique situation. Similarly, in *Metcalf v. Edelman*, 64 F.R.D. 407 (N.D. Ill.1974), the court found no common questions of fact among putative class members challenging the denial of shelter exceptions "since varying circumstances surround the denial of the individual shelter exceptions." *Id.* at 410. In contrast, all ionizing radiation claimants are denied the "right" to retain counsel regardless of their individual circumstances.

Finally, *Cleaver v. Wilcox* actually supports plaintiffs' position, not defendants'. The Ninth Circuit in *Cleaver* held that the requirements of Rule 23 had been met and that a class action was therefore appropriate, even though *on the merits* the court held that an indigent parent's right to appointed counsel in a dependency hearing should be decided on a case-by-case basis. The Ninth Circuit's opinion in *Cleaver* serves to highlight defendants' confusion between what plaintiffs must establish to prevail on the merits of their constitutional challenge and the showing they must make to meet the requirements of Rule 23.

3. *Typicality*

Rule 23(a)(3) requires that the claims of the representative plaintiffs be typical of the claims of the class. The named plaintiffs in this case are two veterans and four veterans' widows. Both veterans allege that they were exposed to ionizing radiation while in the service and that they are currently suffering from disabilities as a result of this exposure. The four widows allege that their husbands died as a result of exposure to ionizing radiation while in the service. All six plaintiffs have filed

SCDD claims which have been denied on the grounds that the injury or death was not caused by service-connected exposure to radiation.[3] All allege that they desired the assistance of counsel and sought to retain counsel but were prevented from doing so by the $10 fee limitation.

■ The claims of the named plaintiffs are thus typical of the claims of class members who, by definition, are individuals with SCDD claims based on alleged exposure to nuclear radiation while in the service and who are precluded by the $10 fee limitation from hiring an attorney. It is true that the specific facts and circumstances surrounding each of the named plaintiffs' *underlying claim for benefits* differs to some extent from the underlying claims of the other named plaintiffs and other class members. But this is not an action for benefits—it is an action challenging the constitutionality of the fee limitation as applied to all ionizing radiation claimants. With respect to this challenge, the claims of the named plaintiffs are clearly typical of the claims of the class members.

Nevertheless, defendants contend that none of the named plaintiffs raise claims typical of the class claims. With respect to plaintiff Marthann Connor, defendants note that although her claim was originally denied, on March 25, 1986 the VA awarded Connor the benefits she sought. Therefore, defendants argue, her claim is not typical and she lacks standing to bring this action. Even assuming that the timing of the VA's change of position (two and one-half years after the initial claim was brought and only six days before defendants filed their opposition to class certification) was purely coincidental, Connor contests her period of retroactivity and thus is both a member of the class and continues to have an economic interest in this action.

With respect to the other five named plaintiffs, defendants contend their claims are not typical because, in each instance, the veteran either was not exposed to radiation while in the service or did not die or become disabled as a result of such exposure. Since the six veterans were not injured as a result of exposure to radiation while in the service, defendants argue, their claims are not typical of the claims of class members who *did* suffer injury or death from service-connected radiation exposure.

Defendants' argument is nothing more than blatant bootstrapping. In essence, defendants argue that the named plaintiffs' claims are not "typical" because the plaintiffs failed to prevail on their claim for benefits before the VA. But, of course, the whole point of this litigation is that plaintiffs contend they need the assistance of counsel in order to adequately prove their claims. The fact that the VA concluded they were not disabled as a result of service-connected radiation exposure neither establishes, for purposes of this litigation, that they in fact suffered no such injury nor renders their claims atypical.

Furthermore, under defendants' argument, none could ever have claims typical of the class, even if all the claims of all class members were identical: if a claimant like Connor prevails on her claim for benefits, defendants contend her claim is not typical and she lacks standing to sue; if, on the other hand, the claimant fails to prevail this, defendants argue, similarly renders the claim atypical. Thus defendants present plaintiffs with the proverbial "Catch–22." It won't work. Moreover, defendants' argument ignores the fact that it is the legal and factual claims raised in *this litigation,* not in the plaintiffs' underlying claims for benefits, that must be "typical."

■ If defendants' argument was only lacking in cogency that would be one mat-

---

**3.** Although plaintiff Reason Warehime has a service-connected disability rating of 60%, his rating is based on conditions unrelated to radiation exposure and he has been denied service-connection with respect to the alleged effects of his exposure to radiation. Similarly, plaintiff

Albert Maxwell currently has a 100% service-connected disability rating but was denied service-connection for his multiple myelomas which he contends were caused by his exposure to radiation.

ter; however, in at least one respect, it lacks honesty as well. In their opposition brief, defendants assert that Stanley Wilson's death "was caused by his long-term alcoholism." The declaration of Robert Warner, a staff attorney for the VA, states that although Wilson's death certificate lists " 'Malnutrition, probable infection' as the immediate cause of death ... Wilson was a chronic alcoholic," the implication clearly being that Wilson's death was caused by his alcoholism. It is true that Wilson's death certificate lists "Malnutrition, probable infection" as the immediate cause of death. However, the very next line of the death certificate states that Wilson's malnutrition, and thus his death, was due to "Metastatic carcinoma." In fact, it appears that Wilson suffered, and died, from pancreatic cancer—one of the "radiogenic diseases" expressly recognized by the VA. 50 Fed.Reg. 34,459 (1985). There is no mention of alcoholism in Wilson's death certificate, let alone any suggestion that this was the cause of his death. Defendant's unsupported assertion to the contrary, and Mr. Warner's partial and obviously misleading quotation from the death certificate, are wholly inexcusable. Although plaintiffs have not expressly requested sanctions, this is one of those cases that cries out for the application of Rule 11. Mr. Warner's declaration will be struck in its entirety. Although this may not have any significant impact on the motion itself, it is intended to send a strong message to the responsible individuals in Washington[4] that this kind of conduct will not be tolerated. In addition, the court notes that it will treat any future submissions by Mr. Warner with due skepticism.

### 4. Adequacy of Representation

■ There are two aspects to the requirement of Rule 23(a)(4) that the representative plaintiffs will fairly and adequately protect the interests of the class: (1) the class representatives' attorneys must be qualified and experienced, and (2) the suit must not be collusive and the interests of the representative plaintiffs must not be antagonistic to those of the remainder of the class. *Harriss v. Pan American World Airways, Inc.,* 74 F.R.D. 24, 42 (N.D.Cal.1977) (citing *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562–63 (2d Cir. 1968)).

■ Defendants do not contest the experience and competence of plaintiffs' counsel, and there is no suggestion that this action is in any way collusive. Defendants contend, however, that the interests of the named plaintiffs are antagonistic to the interests of many putative class members because: (1) there *may* be claimants who do not wish to hire an attorney but who, if plaintiffs prevail, *may* feel forced to do so based on the belief that claimants without an attorney will be treated as "second-class" claimants; (2) there *may* be claimants who believe the current non-adversarial system is preferable to an attorney-based adjudication system and who, if plaintiffs prevail, *may* lose the benefit of the current non-adversarial system; and (3) if plaintiffs do *not* prevail, individuals with "truly complex" cases would be foreclosed from retaining counsel. There is no merit to these contentions.

These arguments are illogical in view of defendants' position throughout this litigation, namely, that the VA and service organizations are able and willing to assist applicants with their claims no matter how simple or complex. They offer no factual basis for their arguments.

Of course, plaintiffs do not seek to "force" anyone to hire an attorney. Their position is that any radiation claimant who *wishes* to hire an attorney has a constitutional right to do so.[5] Even if plaintiffs

---

**4.** The court is satisfied that defense counsel who appeared at oral argument was neither aware of nor directly responsible for the offending misrepresentations.

**5.** For this reason, the cases cited by defendants are clearly inapposite. In each case, the plaintiffs sought to compel certain action which some class members might wish to prevent, e.g. *Nguyen Da Yen,* 70 F.R.D. 656 (unification of Vietnamese children with their biological parents in Vietnam), or to prevent certain action which some class members might not want pre-

ultimately prevail, it is highly unlikely that the purported benefits of the current "non-adversarial" system would be lost. As Justice Rehnquist noted, ionizing radiation claims and "agent orange claims" (which are not at issue in this action) *together* compromise only about .3% of all SCDD claims. There is no reason to believe that permitting attorneys to represent claimants in this small fraction of cases would so transform the entire veterans' claims system so as to eliminate the benefits of what would remain almost entirely a "non-adversarial" system.

Finally, defendants appear to argue that although ionizing radiation claims are not, as a class, inherently complex, there are some "truly complex" claims for which applicants should be entitled to retain counsel. This is curiously at odds with their earlier position in this case. In any event, whatever the ultimate resolution, there is no reason to believe, as defendants suggest, that any claimant will be precluded from establishing the complexity of his or her claim on a case-by-case basis. For instance, in *Cleaver v. Wilcox*, the Ninth Circuit held that indigent parents were not, as a class, entitled to appointed counsel in dependency hearings yet had no trouble holding that class members nonetheless would have the opportunity to establish their right to counsel on a case-by-case basis. 499 F.2d at 945–46.

In short, the court finds no reason to believe that the interests of the named plaintiffs are antagonistic to those of other class members or that the named plaintiffs will, in any other respect, fail to fairly and adequately represent the interests of the class.

*Requirements of Rule 23(b)*

■ In addition to meeting all of the requirements of Rule 23(a), the class must meet at least one of the requirements of 23(b). This action clearly meets the requirements of Rule 23(b)(2) that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole...." Defendants have, without exception, precluded all ionizing radiation claimants from retaining counsel to represent them in connection with their SCDD claims. If plaintiffs can ultimately establish that ionizing radiation claims are, by their very nature, so complex that counsel is required to ensure a constitutionally adequate hearing, injunctive and declaratory relief will clearly be appropriate. If, on the other hand, the court ultimately holds that ionizing radiation claims are not inherently complex but that claimants must be given the opportunity to establish the complexity of their claim on a case-by-case basis, "a statement of due-process principles in the form of a declaratory judgment" to this effect would still be appropriate. *Cleaver*, 499 F.2d at 945.[6]

■ In addition, the prosecution of separate actions by individual members of the class would create a risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Fed.R.Civ.P. 23(b)(1)(A). Even assuming that all courts would interpret the Supreme Court's decision in this case as requiring that veterans be permitted to retain counsel in cases of sufficient complexity, courts will undoubtedly have different and often inconsistent views concerning, *inter alia*, what guidelines and standards to apply in determining whether a specific claim is "sufficiently" complex, whether a claimant

---

vented, e.g. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940) (breach of racially restrictive covenant); *Phillips v. Klassen*, 502 F.2d 362 (D.C.Cir.1974), *cert. denied*, 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974) (offer of early retirement).

6. Of course, if the court were to hold that ionizing radiation claimants have no right to retain counsel no matter how complex their individual claim—a position which even defendants do not assert—a declaratory judgment on a class-wide basis would clearly be appropriate.

is entitled to a *judicial* determination of complexity in every case, and whether the burden of establishing complexity should shift or change depending on whether the underlying claim is of a type that is inherently complex. Separate adjudication of these and other related issues is likely to lead to the establishment of incompatible standards of conduct for defendants regarding the application of the fee limitation.

### Class Definition

Defendants contend that the proposed class, as currently defined, can not be squared with the Supreme Court's decision in this case. Defendants place particular emphasis on Justice O'Connor's statement that, "In its present posture, this case affords no sound basis for carving out a subclass of complex claims that by their nature require expert assistance beyond the capabilities of service representatives to assure the veterans ' "[a] hearing appropriate to the nature of the case." ' " 105 S.Ct. at 3198 (citations omitted). Defendants contend that, "[i]n view of plaintiffs' failure to adduce any creditable evidence since the Supreme Court's decision," there is still no sound basis for carving out a subclass of "complex cases," let alone the one proposed by plaintiffs.

Defendants misconstrue Justice O'Connor's comment. First, it appears that Justice O'Connor's reference to the "present posture" of the case may not have been a reference to the state of the evidentiary record at all. By "present posture," Justice O'Connor may well have been referring to the fact, which she had noted in the preceding sentence, that plaintiffs' claims were "not framed as a class action nor were the lower court's findings and relief narrowly drawn to reach some discrete class of complex cases." *Id.* at 3198. Thus, Justice O'Connor may have meant

only that, in light of plaintiffs' failure to provide a "definition or quantification of 'complex cases' " by identifying and seeking relief on behalf of a particular class, and the district court's failure to provide such a definition or quantification by way of narrowly drawn findings, there was no sound basis for the Supreme Court *itself* to carve out such a group. Rather, this is a task properly left to the plaintiffs in the first instance and, ultimately, to the district court. Indeed, Justice O'Connor expressly held that the issue remained open on remand and should be considered by this court. *Id.*

Even assuming, however, that Justice O'Connor's comment related to the state of the evidence, it does not follow that plaintiffs' failure to present any substantial additional evidence since the Supreme Court's decision precludes certification of the proposed class.[7] It is clear from Justice O'Connor's opinion that she believed the fee limitation would be unconstitutional as applied to a discrete group of claims which, by their very nature, are so complex that the assistance of an attorney is necessary to ensure a fair and adequate hearing. In other words, if plaintiffs could establish the existence of such a group, they would be entitled to prevail *on the merits*. To require plaintiffs to establish that the proposed class *is* such a group in order to obtain class certification, as defendants urge, would be to require plaintiffs to prove their case on the merits as a pre-requisite for bringing a class action—a position which defendants themselves recognize as untenable. (Defs' Opp. at 14).

Defendants also rely on Justice Rehnquist's statement that at least 30% of all ionizing radiation claims are disposed of because the medical examination reveals no disability and that such claims, therefore, can not be considered complex "by any fair definition of that term." 105 S.Ct. at 3194.

---

7. Of course, Justice O'Connor's comment was not in reference to the propriety of class certification; plaintiffs had not yet amended the complaint to add a class claim, let alone proposed a specific class.

Thus, defendants argue, at least 30% of the proposed class is made up of class members whose claims are not "complex" and who, therefore, are clearly not entitled to retain counsel.

■■■ This comment is based solely on the record available at the time of the preliminary injunction. The Justice goes on to conclude that not all such claims would be complex. However, implicit in his observation is the lack of a basis for determining the number of complex cases. At the trial on the merits the court will have to make this determination and take into account the realities of the claims adjudication process. For example, a veteran seeking SCDD benefits must present the VA with all supporting evidence and documentation at the time he or she files the claim for benefits. The VA then considers all this evidence, along with the report of the examining VA doctor, to determine whether and to what extent the claimant is entitled to benefits. Thus, at the time the claimant must develop and present the evidence to support his claim—tasks which plaintiffs contend requires the assistance of counsel—there is no way of knowing on what grounds the VA might ultimately decide the claim. In light of the nature of the claims process, the court concludes that for purposes of determining a claimant's right to counsel, the complexity of the claim must be judged in terms of the nature and extent of the showing the claimant will have to make in submitting his claim to the VA—not on some retroactive assessment of whether the VA's ultimate decision is a complex one. In other words, it is the nature of the *claim* presented to the VA, not the nature of the VA's ultimate *deci-*

*sion*, that determines "complexity" for purposes of a claimant's right to counsel. Under this view, the fact that the claims of some putative class members might ultimately be denied on the grounds that they suffered no disability, does not render their inclusion in the proposed class inappropriate.

In addition, plaintiffs may be able to establish that, because of the nature of radiation-related diseases, establishing the existence of a medical disability in ionizing radiation claims is, to a constitutionally significant degree, more complex than establishing disability in other cases. Although the current record would not support such a finding, plaintiffs should be given a reasonable opportunity to present evidence on this issue.

CONCLUSION

The court finds that the requirements of Rule 23 have been met and that the proposed class may be conditionally certified as currently defined, subject to modification should the court determine that such modification is warranted either by the evidence or applicable law.

IT IS SO ORDERED.